LAIGHTON v. CITY OF CARTHAGE, MO.

(Circuit Court, D. Missouri, S. W. D.    December 10, 1909.)

1. WATERS AND WATER COURSES (§ 188*)—WATERWORKS COMPANY—FRANCHISE —EXPIRATION—EFFECT.

On the expiration of a water company's franchise by limitation, the company's right to operate its plant and use the streets of the city therefor ceased, and with it the right of the city to demand service.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 287; Dec. Dig. § 188.*]

2. WATERS AND WATER COURSES (§ 188*)—FRANCHISE—EXPIRATION—CONTINUED SERVICE—WATER COMPANY'S OBLIGATIONS.

Where, after the expiration of a water company's franchise, it continued to operate its plant and render service to the public, it was bound during such period to perform the obligations growing out of such assumed quasi public service, to the extent that it was required to supply water adequate to its reasonable capacity and at reasonable rates, and to that extent it was subject to the jurisdiction of the courts to enforce its implied undertaking.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 287; Dec. Dig. § 188.*]

3. WATERS AND WATER COURSES (§ 188*)—WATER COMPANY'S FRANCHISE—TERMINATION—CONTINUED SERVICE—LICENSE.

Where a water company, after the termination of its franchise, continued to furnish water, it did so according to a quasi contractual relation, which was a mere license from which either it or the city could withdraw at will.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 287; Dec. Dig. § 188.*]

4. WATERS AND WATER COURSES (§ 188*)—WATER COMPANIES—TERMINATION OF FRANCHISE—CONTINUANCE OF SERVICE—REGULATION.

A water company continuing to furnish water after the termination of its franchise is subject to regulation by the state or the municipality.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 287; Dec. Dig. § 188.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

175 F.—10

5. Courts (§ 493*)—Jurisdiction—State Court—Prior Action—Issues.

Where the entire subject-matter involved in a suit in the state court was the right of a water company to shut off the supply of water because of the city's failure to pay arrears for hydrant rentals, in which the water company recognized that in furnishing the water after the expiration of its franchise it was performing a quasi public service for which it was demanding compensation, and the court restrained the shutting off of the water on certain conditions and retained jurisdiction for further orders, such retained jurisdiction extended only to the carrying out of the decree rendered, and did not give to the court exclusive jurisdiction of a suit by complainant to prevent the city from interfering with his expressed intention of ceasing to furnish water and dismantling the plant.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1349; Dec. Dig. § 493.*]

6. Courts (§ 493*)—Exclusive Jurisdiction—Priority.

A decree in a state court in personam, restraining a water company under which complainant claimed from refusing to continue to furnish water to the city on certain conditions, which neither fixed a lien on the water company's property nor assumed to act on any property in custodia legis, did not give the state court exclusive jurisdiction of a subsequent proceeding by complainant to restrain the city from interfering to prevent him from dismantling and removing the plant.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § ·1349; Dec. Dig. § 493.*

Conflict of jurisdiction with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

7. Judgment (§ 685*)—Conclusiveness—Parties—Mortgagees.

A mortgagee of the plant of a water company, who was not a party to a suit by the city to restrain it from refusing to furnish water because of the city's delinquency in the payment of water rates, was not bound by the decree so as to prevent him, after obtaining title to the waterworks company's property by conveyance of the equity of redemption instead of by foreclosure, from dismantling and removing the plant.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1208; Dec. Dig. § 685.*]

8. Waters and Water Courses (§ 188*)—Franchise—Termination—Plant—Removal from Streets.

On the termination of a waterworks company's franchise by lapse of time, it was entitled to enter on the streets of the city without let or hindrance for the removal of its pipes and appliances.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 287; Dec. Dig. § 188.*]

9. Waters and Water Courses (§ 188*)—Termination of Franchise—Removal of Water Company's Plant—Interference by City.

Where, after considerable litigation between a water company, whose franchise had expired, and the city, the water company, which was doing business at a loss, deeded its property to a mortgagee to save foreclosure expenses, and it appeared that the city intended to carry out its purpose to keep the waterworks plant in operation until such time as it could complete its own independent plant, though complainant was desirous of removing his property, he was entitled to an injunction restraining the city's officers from interfering, by suit or otherwise, with his employés in removing his pipes and appliances from the city's streets.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 287; Dec. Dig. § 188.*]

In Equity. Suit by G. Ralph Laighton against the City of Carthage, Missouri. Decree for complainant.

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This is a bill in equity to enjoin the defendant city from in any wise interfering with, or preventing the complainant from removing, the water plant, machinery, water mains, pipes, and hydrants from the streets of the city, etc. The application for preliminary injunction has been duly heard and submitted. The controversy substantially grows out of the following state of facts:

In 1885 the defendant, a city of the third class under the statute of Missouri, granted to one Star the right and privilege to construct and maintain pumping machinery and necessary equipments for supplying the defendant with water for flushing its sewers, streets, and alleys, and to establish and maintain therein hydrants, mains, and pipes for supplying city buildings and institutions with water, and also the citizens thereof for domestic purposes. By mesne conveyances and transfers this grant and right passed to the Carthage Water & Power Company. The grantee proceeded to establish such plant and water system at an outlay of between $100,000 and $200,000, and to furnish water under such contractual obligation.

The franchise by its terms expired about 1905. It contained no provision entitling the grantee to renewal or extension of the right, and contained no provision requiring the city to purchase the plant and water system at the expiration of the charter. Neither was there any provision in the grant which prohibited the city from constructing its own water plant or system and operating the same contemporaneously with that of the grantee.

When the limitation period of the grant expired, the water company continued to operate its plant and to furnish the city with water as theretofore. A controversy arose between the city and the water company respecting the refusal of the city to pay its arrears for hydrant rentals; the city asserting certain defaults on the part of the company as to the quantity and quality of the water furnished. The city continuing and persisting in such default, as claimed by the water company, the latter gave notice of a purpose to shut off the supply of water to the city unless said dues in arrear were paid. Thereupon the city instituted proceedings in the circuit court of Jasper county, Mo., to restrain the water company from carrying into execution its threatened discontinuance of water supply for city purposes. Temporary injunction was granted, accordingly, conditionally. The court on final hearing, after finding that the city was indebted to the water company in a large sum of money for hydrant rentals, found that:

"The sum of $4,842.72 which was collected from the taxpayers of the city of Carthage on the special tax levy for the purpose of paying for hydrant rentals and street sprinkling, and that the sum of $7,000 belonging to the said water fund, collected in the same way and for the same purpose, has been by the council of the city transferred and diverted from the said fund to the general revenue fund of said city, and should be returned to said water fund from said general revenue fund at the earliest possible date. *  *  *

"The court further finds from the evidence that the plaintiff is indebted to the defendant for water furnished by the defendant to the plaintiff for sprinkling the streets of the city of Carthage at the rate of $20 per month, commencing May 19, 1909, and the plaintiff is to pay defendant for such sprinkling from said date at the rate aforesaid.

"It is therefore ordered, adjudged, and decreed by the court that the temporary injunction heretofore granted in this case be continued in force until August 20, 1909. And it is further considered and ordered that if upon that date it appears to the court that the plaintiff has paid to the defendant the sum of $4,842.72, to be applied as may hereafter be ordered by the court, then the sum of $1,513 now in the hands of the clerk of this court will be ordered by this court to be paid over to the defendant for hydrant rentals from May 19, 1909, and thereupon the temporary injunction heretofore issued in this case will be continued in force until the November term, 1909, of this court, at which time, on the payment to the defendant by the plaintiff of said sum, the court will make such other and further orders as to the continuance of the temporary injunction in force from time to time thereafter as the circumstances require, and the efforts of plaintiff city in good faith to restore to the water fund of said city the sums transferred therefrom to the general revenue fund may demand as justice and good conscience requires, which sums when so restored to said water fund are to be paid to the defendant on the indebted-

ness heretofore found; otherwise, plaintiff's bill at that time will be dismissed, and the temporary injunction dissolved.

"It is further ordered, decreed, and adjudged that unless the plaintiff on or before the 20th day of August, 1909, pay to the defendant, or the clerk of this court for the defendant, the said sum of $4,842.72, then on said 20th day of August, 1909, the plaintiff's bill herein will be dismissed."

Afterwards on the 20th day of August, 1909, the court made a further order reciting that the plaintiff city had complied with the order of the court of the 31st day of July, 1909, and that it did on the 10th day of August, 1909, pay to the defendant the said sum of $4,842.72. The clerk of the court was ordered to pay over to the defendant the sum of $1,513 theretofore deposited with the clerk for the use of the defendant; said sum to be in payment of hydrant rentals from May 19, 1909, to November 19, 1909. It was thereupon ordered that the temporary injunction heretofore issued in the case be modified and amended so as to require defendant to maintain suitable telephone arrangements so as to be notified in case of fire, to furnish the best pressure of which its pumps are capable, and to maintain such pressure during the time the fire department of the city shall be using water to extinguish fires. "And it is further ordered that the temporary injunction, as so modified and amended, should continue in force until the November term, 1909, of this court, and until further ordered by the court."

The said waterworks company's plant having been long prior to the proceedings aforesaid mortgaged to secure its bonds, and default having been made to keep the conditions of said mortgage, on the 14th day of October, 1909, at a meeting of the stockholders and directors of said company, it was resolved that, the company being in default as aforesaid, and in fact insolvent, to save the expense and delay of foreclosure proceedings under the mortgage, the property be conveyed to the complainant in trust for the use and benefit of the mortgagee; which was done, and possession of the property was turned over to him. He thereupon gave written notice to the city of Carthage that he would discontinue operating the plant, shut off the pumps, and move the same. Whereupon the city in the said suit in the state court brought what it terms a "supplemental bill" against the said purchaser, complainant herein, who was a nonresident of the state, and not found therein, seeking to enjoin him from carrying into execution said purpose. On notice to an employé of the water plant, the court granted a temporary restraining order enjoining the complainant herein. On his application the cause was removed into this court. Whereupon the defendant herein moved to remand the cause to the state circuit court, which motion was denied. Thereupon the city asked leave to dismiss the proceedings as against this complainant, which was granted. The temporary injunction against him ordered by the state court was dissolved, and the cause of the city of Carthage against the said water company was remanded to the state court. Thereupon the present bill in equity was presented, which charges that the city, knowing the purpose of the complainant to discontinue operating and remove said plant, threatens to interfere with, impede, and prevent the said action, threatening to bring sundry and divers actions at law and in equity to prevent him from obtaining lawful possession of his property and removing the same from the streets of the city, etc., and praying for an injunction to prevent the threatened acts.

C. F. Mead and Willard P. Hall, for complainant.
J. D. Perkins, for defendant.

PHILIPS, District Judge (after stating the facts as above). When the franchise contract between the water company and the city expired by limitation, the right of the company to operate its plant and use the streets of the city therefor ceased, and with it the right of the city to demand the service. The relation between them was contractual, so that when the contract ended either was at liberty to go its way. Neither could compel the other against its consent to do business with it. By consent the company continued to furnish water supply;

and the city continued to take it as theretofore. The law is well settled that, under such tacit arrangement, while so acting the water company was rendering a service to the public, and, therefore, during such service it became subject and amenable to the obligations growing out of such assumed quasi public service, to the extent that it was required to supply water adequate, to its reasonable capacity, and at reasonable rates, and to this extent became subject to the jurisdiction and supervision of the courts to enforce such implied undertaking. The authorities are in agreement to this effect. Bridge Co. v. Prange, 35 Mich. 100, 24 Am. Rep. 585; Cin. Inc. Plane R. R. Co. v. Cincinnati, 52 Ohio St. 609, 44 N. E. 327; 4 Cook on Corp. (6th Ed.) § 913; Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa, 234, 91 N. W. 1081.

As this postulate is conditioned upon the implied continued contractual relation, as in the case of a mere license, either party may at will withdraw therefrom and put an end to it. Were the law otherwise, it would be in the power of a mere licensee to perpetuate indefinitely an expired franchise, and it would be in the power of the grantor to compel continued service indefinitely from one under no contractual obligation to render service.

The authorities relied on by respondent's counsel to support his contention that after the expiration of the charter contract, where shutting off the water supply would entail great inconvenience and disastrous consequences to the public, depending, as in this case, upon the continued supply of water, a court of equity may interpose to enjoin the shutting off the supply and removing the plant, will be found to apply to the instance where the grantee, after the lapse of the franchise, continues to perform such quasi public service. So long as that relation continues, the party exercising this public function, is under obligations, as heretofore stated, and is amenable to legal compulsion to render this service at reasonable rates, and may not shut off the water supply because of any disagreement with the municipality respecting delinquencies on its part in making payment therefor, as the courts are open to compel the recipient to do justice so long as the furnisher is willing to continue to render such public service.

In other words, where the franchise of a public service corporation expires, the relation thereafter between the parties is no otherwise than that of a corporation engaged in a quasi public business for which a franchise is necessary to confer the absolute right. So long as it continues in such business, it is subject to regulation by the state, or the municipality, a subordinate agency of the state. But it is under no obligation to continue at the pleasure of the public, and it may elect to quit. Munn v. Illinois, 94 U. S. 113–126, 24 L. Ed. 77; Gaslight Co. v. Zanesville, 47 Ohio St. 36, 23 N. E. 60; East Ohio Gas Co. v. City of Akron (Supreme Court of Ohio, not yet officially published), 90 N. E. 40.

The foregoing proposition was not seriously controverted by counsel for the city at the hearing. The real contention put forth by him is that, by reason of the injunction proceeding had in the state circuit court, exclusive jurisdiction over the subject-matter of the present bill was reserved to and resides in the said state court. To this there are

several complete answers. In the first place, the entire subject-matter involved in that suit concerned the right of the water company to shut off the supply of water to the city because of the claimed failure of the city to pay the arrears for hydrant rentals. The bill and answer—the whole issues tried out in that suit—pertained to the question as to the accounting between the parties, and the right of the company to shut off the water simply because of the city's delinquency. The company tacitly recognized that in furnishing water after the expiration of the franchise it was performing a quasi public service for which it was demanding pay. It had not declared its purpose to cease operating its plant and to withdraw it from the city. The court ascertained that a large amount was in fact owing by the city to the company. To say the least of it, the court was most indulgent to the city. It did not. as is customary, require the defendant to make good its delinquencies as a condition to the injunctive relief, but only required it to pay over what money it had on hand. And after finding the fact to be that the city had diverted to other use a considerable sum of money applicable to said hydrant rentals, it required the company to proceed until such time as the city could reinstate that fund. It so held on until all payments were or should be paid. The relief given in that case could be no broader than the issues involved. When the court retained jurisdiction for further orders, its effect, in law, is that it retained it only for the purpose of carrying to completion its decree. By no possible permissible construction could the court thereunder extend its jurisdiction to compel a subsequent purchaser of the plant to continue to furnish the city water at its pleasure.

In the second place, the decree was not in rem. It neither fixed any lien on the res, nor was the physical property in custodia legis. The decree was wholly in personam, as far as it went, commanding mere personal service of the corporation under the conditions therein involved.

In the third place, the property was burdened with an antecedent mortgage subject to the conditions therein expressed, among which was the right of the mortgagee to foreclose in case of default in the payment of interest, etc. The company did default, becoming in fact insolvent, whereupon the trustee in the mortgage was entitled to enter into possession and foreclose. Thereupon the stockholders and directors, as they had a right to do, in convention declared such default and forfeiture, and to avoid the expense and delay of a foreclosure proceeding, by consent of all parties concerned, executed to the complainant a deed of conveyance to the property to hold in trust for the benefit of the mortgagee. The mortgagee whose rights were anterior was not made a party to the suit in the state court, and is not bound by any judgment therein.

"A mortgagee of a street railway company is not concluded by decree affecting the validity to which the mortgagor only was a party." Louisville Trust Co. v. Cincinnati, 76 Fed. 293–296, 22 C. C. A. 334.

"The privity of the mortgagee with the mortgagor respects only the estate as it existed at the date of the mortgage. It cannot be affected by decree against the mortgagor to which he is not a party." Secor v. Singleton (C. C.) 41 Fed. 725, and authorities therein cited.

Palpably enough the complainant cannot be regarded as a purchaser pendente lite, taking the property cum onere, under the mere decree for personal service to be performed by the mortgagor, imposed after the making of the mortgage.

When this purchaser so acquired the property, he immediately gave notice to the city that he would no longer supply it with water, and that he would dismantle and remove the plant. He was thereafter under no contractual relation with or obligation to the city, expressed or implied, to render continual service to it.

No authority has been cited, and I am unable to find any, that even squints at the principle of law that by any stretch of judicial authority the state court, under a decree which was res inter alios acta, can reach out its hand and compel this complainant to run its plant indefinitely for the accommodation of the defendant city.

The right of the complainant at the termination of the contract to enter upon the streets of the city to remove its plant, without let or hindrance, does not admit of debate. As expressed in the syllabus in Cleveland Electric Railway Company v. Cleveland, 204 U. S. 116, 27 Sup. Ct. 202, 51 L. Ed. 399:

"In the absence of any provision to that effect in the original franchise, the city granting a franchise to a street railway company cannot, on the expiration of the franchise, take possession of the rails, poles, and operating appliances; they are property belonging to the original owner, and an ordinance granting that property to another company on payment to the owner of a sum to be adjudicated as its value is void as depriving the owner of its property without due process of law."

The right to enter upon the streets of the city for the purpose of excavating and removing the water plant, pipes, hydrants, and other equipments, inheres in the very right of ownership of the property, as, otherwise, the right of ownership could not be exerted.

Both parties have presented records, papers, and affidavits on this hearing, to which the court has given due consideration. Among these are the affidavits of the city officers portraying in strong colors the dire consequences of discontinuing the supply of water to it before the completion of its independent water system now in process of construction. For such results the city can neither rightfully nor morally blame any one but itself. The wrath of its inhabitants should be against the city authorities, or turned inward upon themselves as the authors of their own misfortune. The city had its choice either by anticipation to have built its own waterworks, and have them in readiness when the contract with the water company should expire, or to have negotiated with the company for the purchase of its plant; and, if the terms of the purchase could not be agreed upon, the city was empowered by the state statute, by prescribed legal procedure, to have the company's plant condemned to its use at a price to be fixed by a local court or a jury presumably not unfriendly to it. It and its citizens saw fit to take neither course. By refusing to pay its debt to the water company, and by diverting the fund created for such purpose, it thereby rather aggravated the alleged condition of insufficient water supply, as it was thereby crippling the very means by which the operation of the plant could be rendered efficient. It could not convert

its· own delinquencies into an equitable right to compel, on its own terms, the company to maintain and operate its plant, furnishing it and its inhabitants water until, in its own way and time, it could complete its waterworks, and then challenge the company's right to use its streets either in furnishing private consumers water, or to remove its plant. This is especially intolerable when it appears from the affidavit on behalf of the complainant that it is operating its plant at an expense in excess of the income from the water rentals.

Doubtless this court, by its action in the premises, will incur denunciation from the people who may suffer from the hand of the law. But as the law is "a rule of action prescribing what is right, and prohibiting what is wrong," the court must follow where it leads, regardless of personal consequences to the mere minister of justice.

The mayor and council of the city state in affidavits that it is not their purpose to institute any new suit or action to prevent the proposed action of the complainant. But they were careful to refrain from saying that they or the city did not intend to take any action to prevent or obstruct the complainant in the exercise of his claimed right. And Judge Perkins, representing the city herein, with that candor characteristic of an intellectually honest man, admitted in effect that the said state court would be applied to to deal with the complainant's servants and employés if they undertook to dismantle and remove the water plant as for a contempt of said injunctive decree. In view of the former action of that court in granting a temporary injunction against this complainant, under the semblance of a supplementary proceeding in the original suit (which, from the discussion had before this court on the motion to remand, counsel for the city must have become satisfied was a clear misconception of a legal right), it is transparent what will ensue if this court should deny the injunction herein prayed for. The moment an employé of the complainant undertook to shut down the pumps, or stick a pick in the streets of the defendant for the purpose of removing the plant, water mains, hydrants, etc., the defendant would obstruct and intimidate them by applying to the state court for a contempt attachment, having such laborers arrested and brought before the court to be tried for contempt. It is no answer to this to say this court cannot by injunction stay such course or procedure, that the jurisdiction of that court to proceed can be tried out in the due course of judicial proceeding; as, for instance, by appeal, during which the laborer may lie in jail under sentence, unless the complainant, at his own expense, undertook to conduct such employé's defense, or to furnish bail for him. Such litigation might be interminably multiplied and indefinitely prolonged, during which the defendant will have completed its own water plant, compelling in the meantime the complainant to. furnish it water, with or without loss to him. No more effectual means could be devised, without pecuniary liability on the part of the city, for the wrong done the complainant than this proposed scheme. Short, indeed, would be the arm of this court, if it could not reach out its protecting hand to relieve a suitor, under such circumstances, from such gross injustice.

A temporary injunction is ordered as drawn by the court.