MILLARD O. BOWERS, Appellant, v. KANSAS CITY PUBLIC SERVICE COMPANY.—41 S. W. (2d) 810.

Division One, September 5, 1931.

*Harry G. Kyle* and *Walter A. Raymond* for appellant.

*Charles L. Carr, E. E. Ball* and *Harding, Murphy & Tucker* for respondent.

FRANK, J.—Action by plaintiff, appellant here, to recover damages for alleged personal injuries. The verdict of the jury was in favor of plaintiff in the sum of $15,000. The trial court set the verdict aside and granted defendant a new trial. Plaintiff appealed.

Defendant's motion to dismiss the appeal herein on the ground that plaintiff's statement of the case does not comply with the rules of this court was taken with the case. After duly considering this motion, we have concluded that the appeal should not be dismissed and accordingly overrule the motion.

Prior to 1920 the Kansas City Railways Company owned, maintained and operated a system of electric street railways in Kansas City, Missouri, and Kansas City, Kansas. On October 27, 1930, said company was placed in the hands of receivers by the United States court, and said receivers were operating said street railways at the time plaintiff was injured in October, 1924. Later the properties of said railways company were purchased by and transferred to the Kansas City Public Service Company subject to liabilities against the receivers, and said Kansas City Public Service Company was thereupon substituted as the party defendant in this case.

In December, 1902, Kansas City, Kansas, granted to the company then owning said railway system, its successors and assigns, a franchise which authorized the operation of said railway system in said city for a period of twenty years. This franchise  expired in December, 1922, and was not renewed or extended. The franchise provided that the railway company should maintain in good condition and safe for public travel all parts of bridges over which it operated its street cars. This provision reads as follows:

"Said railway company shall also refloor, repair and maintain in good condition and safe for public travel all parts of the aforesaid bridges and viaducts, including the viaduct approached."

One of the bridges on which the railway company maintained a double car track over which it operated its street cars was known as Jersey Creek Bridge. On October 25, 1924, while plaintiff was driving a truck loaded with sand over and across said bridge, the stringers beneath the bridge gave way and plaintiff and his truck fell through the bridge to the rocky bed of the creek about thirty feet below, and he received the injuries for which he sues.

Defendant, respondent here, contends that its demurrer to the evidence should have been sustained. If this contention is sound, the trial court was warranted in granting defendant a new trial for that reason, if for no other. The first reason advanced by defendant as to why its demurrer should have been sustained is that it was under no duty to maintain the bridge in question because the franchise which required it to do so expired some two years before plaintiff was injured. The franchise expired in December, 1922. Plaintiff was injured in October, 1924. This franchise was a contract between the city representing the people on the one hand, and the street car company on the other. Both parties to this contract

were bound by the stipulations contained therein. During the life of this franchise contract it was the duty of defendant to maintain the bridge in question in good condition and safe for public travel because the contract expressly so provided. The relation between the city and street car company was contractual, so when the franchise which created that contractual relation expired by limitation, neither party thereto was longer bound thereby. The street car company could have removed its tracks, cars and other property from the city, or the city could have compelled it to do so. [Laighton v. City of Carthage, Mo., 175 Fed. 145.] But neither party to the contract saw fit to take such action. After the franchise contract expired, the receivers continued to operate the street cars on the public streets of the city and over the bridge in question, continued to pay the street car license tax to the city as provided by the franchise, continued to repair the street railway tracks and the bridge in question, continued to pay to the city the annual park tax of $5,000 and continued to maintain the paving in the car tracks and for a distance of eighteen inches on each side thereof.

It appears that after the franchise contract terminated by limitation, the receivers continued to maintain and operate the street cars on the public streets of the city under the terms and conditions set forth in the franchise. In other words, they acted as though the franchise was still in existence and for that reason they should not be heard to say they were not exercising it. Since the receivers treated the franchise as a live instrument, acted thereunder and received its benefits, they should not be permitted to avoid the obligations it created. [Landon v. A. T. & S. F. Ry. Co., 113 Kan. 628, 216 Pac. 309.] The rule is well stated in 26 Corpus Juris, page 1029, par. 60, in the following language:

"The assumption of a franchise and the exercise of rights which can only be exercised thereunder will constitute an estoppel to deny the existence of such franchise for the purpose of defeating claims arising by reason of the existence of such franchise, or defending an action brought by reason of the existence of such franchise. One may be estopped to deny that he held a special franchise when by his actions he apparently recognized that he was exercising the franchise right under a grant from the public authorities.

Other authorities to the same effect are: Ex Parte Henshaw, 73 Cal. 486, 15 Pac. 110; People v. State Tax Commissioners, 160 App. Div. (N. Y.) 771; Minneapolis, etc., Railway Co. v. Oppegard, 18 N. D. 1, 118 N. W. 830.

We next take the contention that defendant's demurrer to the evidence should have been sustained because plaintiff's own evidence

showed that he was not entitled to recover. At all times here in question there was in full force and effect in the State of Kansas, Section 68-1129, R. S. Kansas 1923. This statute provides the following:

"That all persons owning, controlling, operating, or managing a steam or gasoline threshing engine, sawmill engine, traction engine of any kind, or any vehicle of great weight, and moving the same over the public highway, are required to lay down planks not less than one foot wide, three inches in thickness, and of sufficient length on the floor of all bridges and culverts, and across all cross-walks in incorporated towns and villages, situated on the public highways, while crossing the same, for the wheels of the said engine or heavy vehicle to run on while crossing such bridge, culvert or cross-walk; all such bridges, culverts and cross-walks shall be planked in such manner as will prevent injury from all mechanical devices such as lugs: Provided, That this section shall not apply to any truck or wagon with its load not exceeding five tons in combined weight, or to bridges and culverts having a concrete brick or stone floor covered with not less than four-inch wearing surface of earth, gravel, macadam, or other durable material: Provided further, That no person, firm or corporation hereafter seeking to recover damages against any city, township or county under the provisions of this section shall secure a judgment therein unless the jury find that such person, firm or corporation had, before receiving the injury complained of, complied with the provisions of this section."

A contract should be construed in the light of the law as it existed at the time the contract was made. Laws existing at the time and place of the making of a contract which in any way affect its validity, performance, enforcement or discharge are as much a part of the contract as though expressly referred to or incorporated within its terms. [Swabey v. Boyers, 203 S. W. 204, 274 Mo. 332.] We must, therefore, treat the above quoted statute as a part and parcel of defendant's franchise contract. This statute requires that bridges on the public highway shall be planked before attempting to cross them with vehicles of great weight. Any truck or wagon with its load not exceeding five tons in combined weight is exempted from the provisions of the statute. The franchise contract provides that the railway company shall maintain all bridges in good condition and safe for public travel. Treating the statute as a part of the franchise contract, we interpret the franchise as requiring the railway company to maintain the bridge in question in such condition that it would be safe for the passage of vehicles weighing five tons or less, without planking the bridge, and in good condition and safe for the passage of ordinary vehicular traffic in excess of

five tons, with the bridge planked as provided by the statute before such vehicle attempted to pass over it.

Plaintiff's evidence was to the effect that the bridge was built in 1907 and had become rotten, decayed and unsafe for public travel; that a man driving a heavy truck loaded with sand, in excess of five tons in combined weight, crossed the bridge about ten minutes ahead of plaintiff and broke the bridge; that plaintiff's truck which weighed less than five tons, followed about ten minutes later and fell through the place in the bridge that was broken by the heavy truck; that neither plaintiff nor the man driving the heavy truck planked the bridge before crossing it.

Defendant's evidence tended to show that the bridge in question was rebuilt in 1923 with sound and secure lumber which made it sixty per cent stronger than the original construction; that it was inspected daily and was in good repair; that after the break in the bridge, the breaks in the timbers looked fresh and clean; that there were no rotten or decayed planks or lumber in the bridge; that plaintiff voluntarily drove on the bridge with a five-ton truck loaded with four yards of sand which weighed 2600 pounds per yard, without planking the bridge; that the bridge was safe for a 10,000 pound or five-ton load without planking and with planking its strength would have been doubled and it would have carried a 20,000-pound actual load; that overloading of the bridge caused it to break.

Whether the bridge would have safely carried a five-ton load without planking or a heavier load with planking, whether defendant was entitled to notice of the breaking of the bridge by the first truck, or whether the condition of the bridge was such that defendant should have known that the bridge was not safe for public travel, and whether plaintiff's truck with its load weighed more or less than five tons, were, under the evidence, all questions of fact for the jury to determine. Defendant's demurrer to the evidence was properly overruled.

The trial court granted defendant a new trial on the ground that the verdict in plaintiff's favor was contrary to the greater weight of the evidence on the issues submitted to the jury under Instruction D-6.

The substance of this instruction was that if the jury found (1) that the bridge was of sufficient strength to hold and carry ordinary vehicular traffic weighing five tons or less, (2) that about ten minutes before the accident complained of a heavy truck load of sand weighing in excess of five tons crossed over the bridge and the weight of said truck load of sand cracked, broke and damaged the bridge and rendered it unsafe, (3) that plaintiff within ten minutes thereafter, in attempting to cross the bridge with his truck, fell through the bridge at the place where the heavy truck broke it, and (4) that

778

defendant had no notice of the breaking of the bridge between the time it was broken and the time of plaintiff's injury, the verdict must be for defendant.

There was evidence pro and con on the issues submitted by this instruction. In determining whether or not a new trial should be granted, the trial court was authorized to and did pass upon the weight of the evidence touching the issues submitted by Instruction D-6. We can determine whether or not there was any substantial evidence to support the trial court's order granting a new trial, but that is as far as we are authorized to go. [State ex rel. v. Ellison, 268 Mo. 225, 231, 186 S. W. 1076; St. Louis v. Franklin, 26 S. W. (2d) 954; Guthrie v. Gillespie, 6 S. W. (2d) 886.] This is so because trial courts may and appellate courts may not pass upon the weight of the evidence. In view of the defendant's evidence which tended to support the issues submitted to the jury by Instruction D-6, we cannot say, as a matter of law, that there was no substantial evidence to support the trial court's order granting defendant a new trial.

Plaintiff's first complaint against Instruction D-6, is that it erroneously assumed, as a matter of law, that the Kansas planking statute established the weight of ordinary vehicular traffic at five tons or less.

We do not so interpret the instruction. Treating the planking statute as a part of the franchise, which we must do, the franchise required the defendant to maintain the bridge in good condition and safe for the passage of vehicles weighing five tons or less without planking the bridge, and safe for the passage of ordinary vehicular traffic weighing in excess of five tons with the bridge planked in the manner provided by the statute. That part of the instruction requiring the jury to find that the bridge was of sufficient strength to safely hold and carry the weight of ordinary vehicle traffic not in excess of five tons in weight, is not a holding that the statute limits the weight of vehicles which may cross the bridge to five tons or less, but is a holding that the statute permits vehicles of that weight to cross the bridge without planking it. Neither does that part of the instruction requiring the jury to find that the bridge was cracked, broken and damaged by a heavy truck load of sand, weighing in excess of five tons, passing over the bridge ten minutes ahead of plaintiff, amount to a holding that the statute prohibited such truck from crossing the bridge because it exceeded five tons in weight. Such requirement in the instruction amounts to a holding that the heavy truck had no lawful right to cross the bridge without planking it, and if it did so and broke the bridge, defendant was not responsible for the unlawful breaking. Plaintiff's own evidence showed that about ten minutes before he attempted to cross

the bridge with his truck, a heavy truck load of sand weighing in excess of five tons crossed the bridge without planking and broke and damaged the bridge. These facts are not disputed. We may, therefore, treat them as conceded or admitted facts so far as the plaintiff is concerned. The instruction criticized did not require the jury to find that the driver of the first truck did not plank the bridge, but as plaintiff concedes the bridge was not planked, it was not error to omit that conceded fact from the instruction. It is never reversible error to either assume or omit to require the jury to find admitted facts.

The next complaint against the instruction is that it amounts to a holding, as a matter of law, that the passage of the first truck over the bridge was the proximate cause of plaintiff's injury.

The contention is that even though the first truck exceeded five tons in weight and passed over the bridge without planking it and broke and damaged the bridge, defendant would nevertheless be liable because it was a common occurrence for heavily loaded trucks to pass over this bridge; that it was defendant's duty to maintain the bridge in such condition that it would safely carry such traffic; that since defendant was bound to anticipate the passage of heavily loaded trucks over the bridge, it was also bound to anticipate that some truck or other vehicle would go through the bridge unless it was maintained in such condition that it would safely carry such traffic as commonly passed over it.

This contention overlooks the fact that defendant's duty was contractual. The franchise contract required that the bridge be maintained in such condition that it would safely carry vehicles of five tons or less in weight without planking the bridge, but it did not require that the bridge be maintained in such condition that it would carry vehicles in excess of five tons in weight unless the bridge was planked in the manner provided by statute before such vehicles attempted to cross it. It, therefore, logically follows that if the bridge was sufficiently strong to carry a vehicle weighing five tons or less, and a heavy truck load of sand weighing in excess of five tons crossed over the bridge without planking it and the weight of said truck cracked, broke and damaged the bridge and rendered it unsafe, and within ten minutes thereafter plaintiff started across the bridge with his truck and fell through the break in the bridge and was injured, the breaking of the bridge by the heavy truck was the proximate cause of the injury. The instruction did not assume, as a matter of law, that the breaking of the bridge was the proximate cause of the injury, but it submitted the facts touching that question to the consideration of the jury.

It is next contended that the court erred in holding, as a matter of law, that defendant was not liable for plaintiff's injuries unless defendant had actual notice of the breaking of the bridge before plaintiff was injured.

The court did not so hold as a matter of law. The substance of the instruction was that if the jury found that a heavy truck load of sand weighing in excess of five tons passed over the bridge without planking it, and the weight of said loaded truck cracked, broke and damaged the bridge and rendered it unsafe, and within ten minutes thereafter plaintiff attempted to cross the bridge with his truck and fell through the break in the bridge and was injured, defendant was not liable for said injuries unless it had notice of the break in the bridge in time to have prevented plaintiff from falling through such break. It is obvious, without argument, that if a heavily loaded truck weighing in excess of five tons, in violation of the statute, crossed the bridge without planking it and as a result thereof broke the bridge and rendered it unsafe, defendant would not be liable for injuries resulting from such unlawful breaking, unless it had notice of such breaking in time to have prevented the plaintiff's injuries. The short space of ten minutes intervening between the breaking of the bridge and the accident which resulted in plaintiff's injuries was not sufficient time upon which to base a holding that defendant should have known of the breaking of the bridge in time to have prevented plaintiff from falling through the break. The court, therefore, properly submitted the facts regarding the question of notice to the consideration of the jury.

It is contended that the purpose of the planking statute was not to increase the strength or carrying power of the bridge, but was for the protection of the floor of the bridge. From this contention it is claimed that as plaintiff's injuries were not caused by the giving away of the floor, but were caused by the breaking of the stringers under the floor, the statute has no application. It is claimed that the legislative intent to protect the floor of the bridge is evidenced by the following provisions of the statute:

"All such bridges, culverts and cross-walks shall be planked in such manner as will prevent injury from all mechanical devices such as lugs: Provided, that this section shall not apply . . . to bridges and culverts having a concrete, brick or stone floor covered with four-inch wearing surface of earth, gravel, macadam or other durable material."

If these provisions stood alone, there might be merit in plaintiff's contention. The entire statute must be considered in determining the purpose of the Legislature in enacting it. Other parts of the same section of the statute provide that all persons owning, controlling, operating or managing a steam or gasoline threshing engine,

saw mill engine, traction engine of any kind, or any vehicle of great weight, and moving the same over the public highway, are required to lay down planks on the floor of all bridges, etc. This provision of the statute says nothing about lugs or other mechanical devices, but, makes it the plain duty of all persons owning, controlling, operating or managing engines therein named or any vehicle of great weight to lay down planks on bridges, culverts and cross-walks before passing over them, regardless of whether such engines or vehicles are equipped with mechanical devices such as lugs. The evident purpose of this part of the statute was to protect the entire bridge by distributing the weight of vehicles passing over it and thus prevent any particular point in the bridge from being subjected to the strain of the entire weight of such vehicles. That part of the statute providing that "bridges, culverts and cross-walks shall be planked in such manner as will prevent injury from all mechanical devices such as lugs," furnishes additional protection to the bridge. In other words, bridges must be planked for both classes of vehicles, those with and those without lugs, the difference being that if the vehicle is equipped with lugs, the planking must be done in such manner as will prevent injury from the lugs. Evidently the Legislature thought that a concrete, brick or stone floor covered with not less than four-inch wearing surface of earth, gravel, mecadam or other durable material would sufficiently distribute the weight of vehicles without planking the bridge, because bridges and culverts having that character of floors are excepted from the operation of the statute. In construing a statute, the court must, if possible, give effect to the whole and every part thereof, provided the interpretation reached is reasonable, and not in conflict with the legislative intent. [State ex rel. Garesche v. Roach, 167 S. W. 1008, 258 Mo. 541.] The construction we have given the statute under consideration accords with this rule, while the construction contended for by plaintiff would nullify a part of the statute. The contention that the purpose of the planking statute was to protect the floor of the bridge only, is disallowed.

We have concluded not to lengthen this already too long opinion by citing and discussing the many cases cited by both parties. After giving each of these cases due and careful consideration, we are satisfied that we have reached the right conclusion.

Plaintiff's contention that the trial court erred as a matter of law in sustaining defendant's motion for new trial is disallowed.

The judgment is affirmed and cause remanded. All concur.