Richard Nelson POWERS, by his next friend Louvain N. Powers, Respondent,

v.

Ralph H. SEIBERT, Appellant.

No. 22484.

Kansas City Court of Appeals. Missouri.

Dec. 3, 1956.

24. See cases cited in footnote 7, supra.

25. See cases cited in footnote 6, supra.

Brown, Douglas & Brown, Robert E. Douglas, St. Joseph, W. Varner Mayse, Bethany, for appellant.

Roscoe Moulthrop, Bethany, Watkins & Watkins, C. D. Hale, St. Joseph, for respondent.

BROADDUS, Justice.

Richard Nelson Powers, by his father, Louvain Powers, as next friend, sued defendant, Ralph H. Seibert, for personal injuries alleged to have been sustained by plaintiff while a passenger in a motor vehicle owned by the Immaculate Conception Parish of St. Joseph, Missouri, and driven by defendant, at a point near the intersection of 13th and Highly Streets, in St. Joseph, on the 29th day of October, 1954. Plaintiff recovered a verdict and judgment for $2,000. Defendant has appealed.

Defendant was the assistant pastor of the Immaculate Conception Parish in St. Joseph. The motor vehicle he was driving was a 1949 Pontiac station wagon, owned by the Parish, and having four doors. On the day of the injury, plaintiff, who was called "Rickey", was a passenger in the vehicle being transported to his home from the Parish Kindergarten. Plaintiff, then five years of age, was sitting on the second or three-fourths seat in the station wagon, immediately adjacent to the right rear door thereof. One child got out of the station wagon about a half block east of the scene of the injury, and did not securely close the right rear door and, at the request of defendant, plaintiff reclosed the door, latching it securely and pushing down the lock button. Defendant then drove west on Highly Street to its intersection with 13th Street, and came to a stop at that intersection for the stop sign there. Defendant then turned south on 13th Street, "a rather square turn" and was going up hill at approximately five miles per hour. When he "had completed the turn" he heard a child cry "Rickey", and looked back to see the right door hanging open. Defendant immediately stopped the station wagon, got out and found plaintiff lying on the grass between the curb and the sidewalk on 13th Street. Defendant examined plaintiff and found no apparent injury, though plaintiff was crying. Both then got back in the station wagon and defendant drove to the home of plaintiff in Country Club Place, north of the city, and delivered plaintiff to his mother. Plaintiff was later found to have suffered a linear skull fracture at the back of his head, from which he has made a normal recovery, except for remotely possible future complications.

The right rear door of the station wagon was examined after the accident by defend-

ant and Ray Cassler, maintenance man for the Parish, and the door worked properly and exhibited no defect of any kind. The doors of the vehicle opened from the inside, even though locked. Defendant testified that at no time did he have any knowledge of any defect in the right rear door. He and Cassler both stated that no repairs were ever made to or defect found in the right rear door, either before or after plaintiff's injury. The station wagon had been driven "around 85,000 miles" and "about a month" after the accident it "was traded in on a new one."

There was no testimony about the actual happening of the injury other than defendant's personal testimony and, as a matter of fact, the plaintiff in putting on his case presented no testimony concerning the accident other than the statement of his mother, Lavonne Powers, that defendant told her "he was turning the corner and Rickey fell out on the pavement." There was no evidence either on the part of plaintiff or defendant as to how the door came open, or what caused it to come open and the plaintiff to fall out.

Plaintiff's case was submitted on the *res ipsa loquitur* doctrine. Defendant contends that the facts as presented fail to meet the requirements of that rule, and that the trial court erred in refusing his motion for a directed verdict at the close of all the evidence.

Defendant in his brief says the only Missouri case "which appears to be clearly in point" is that of Adams v. Le Bow, 236 Mo.App. 899, 160 S.W.2d 826. That case was one for personal injuries sustained by the plaintiff Adams when she fell from the front seat of an automobile in which she was riding as a guest, and which was being driven by the defendant Le Bow. That suit was originally instituted by the plaintiff against Le Bow, the driver, and George Carson, the owner. At the conclusion of the evidence the court gave a peremptory instruction, offered by defend-

ant Carson, and plaintiff Adams took an involuntary nonsuit as to him.

■ In our opinion, 160 S.W.2d 828, we said: "Our attention has not been called to any Missouri case, and we have found none, where the door of a privately owned automobile suddenly came open, resulting in injury to the guest, has been declared to be such an unusual occurrence that *res ipsa loquitur* would apply * * *." We held that the facts as presented in the Adams case satisfied the three requirements of the *res ipsa loquitur* doctrine, which are: (a) The occurrence resulting in injury was such as does not ordinarily happen if those in charge use ordinary care; (b) The instrumentalities involved were under the management and control of the defendant; (c) And the defendant possesses superior knowledge or means of information as to the cause of the occurrence.

In the course of our opinion we quoted with approval certain language appearing in the case of Roberts v. Economy Cabs, Inc., 285 Ill.App. 424, 2 N.E.2d 128, 130. In the Roberts case the court had under consideration a situation where the door of a taxicab came open and threw plaintiff into the street. In holding both the driver and owner liable under the *res ipsa loquitur* rule the court said:

"There is no proof of negligence on the part of appellants; there is no proof of contributory negligence on the part of appellee. This judgment must stand or fall on the theory of res ipsa loquitur.

"When a thing which caused an injury is shown to be under the management of the party charged with negligence and the accident is such as in the ordinary course of things will not happen if those who have such management use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the parties charged, that it arose from want of proper care.

* * * * * *

"Applying the definition above given by our courts to the maxim of res ipsa loquitur, we find that appellants were in sole charge of the instrumentality which caused the injury. We find a thing happening which will not happen if those who have the management of the equipment use proper care, particularly the highest degree of care. This state of facts, together with the circumstances of the injury, seem to us to justify the application of the maxim. This is not because an injury occurred but because it occurred under the circumstances under which it did occur. It is urged that to say what caused the injury in this case is speculative. In a sense all causes of injuries to which the maxim is applied are speculative. It is never known just what causes the injury. If it could be ascertained by investigation, there would be no need of the maxim."

■ In an attempt to escape from the effect of our holding in the Adams case, defendant says "the testimony in the Adams case was that the door came open without anyone touching it. The evidence in the instant case was that the door was found to be open, after the plaintiff had disappeared from the vehicle, and there is no evidence to show whether or not the door came open of its own accord, the plaintiff opened the door, or someone else opened the door. In other words the jury's verdict was based upon speculation. With this we do not agree.

■ As said by our Supreme Court in the case of Cruce v. Gulf, Mobile & Ohio R. Co., 358 Mo. 589, 216 S.W.2d 78, 81: "In a res ipsa loquitur case a plaintiff is not required to present evidence to overthrow every reasonable theory of nonliability on the part of the defendant. * * * If a plaintiff in such a case were required to produce evidence which would exclude every reasonable theory but that of the negligence of the defendant the doctrine would be annihilated."

Says the same court in the much cited case of Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1003, 1004: "What is a res ipsa loquitur case anyhow? Reduced to simple terms, does it not merely mean that negligence can be proved by circumstantial evidence and that certain circumstances, as to the character of an accident, are sufficient to take the case to the jury? * *

" 'Res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict.'

"The principal difference between a res ipsa loquitur case and a specific negligence case would seem to be that the very basis of liability, *the existence of some negligence,* may be shown by a particular kind of circumstantial evidence, namely, an unusual occurrence of a character which ordinarily results only from negligence (both in pleading and proof), and from which, therefore, negligence is a reasonable inference; while in a specific negligence case the careless acts or omissions which constitute negligence must be stated and proven. In other words, in a res ipsa loquitur case the ultimate fact, *some kind of negligence* is inferred without any evidential facts except the unusual occurrence itself; * * *."

And the same court in the case of Myers v. City of Independence, Mo., 189 S.W. 816, 822, said: "Res ipsa loquitur is a doctrine that adjusts itself to circumstances;" has "its origin, perhaps, in the relation of passenger and carrier, which calls for the highest degree of care in the performance of the duties of the latter * * *. It is a rule of evidence arising in some cases to

the height of a presumption, and always, in cases to which it applies, entitling the party entitled to its benefit to go to the jury on the quesiton of negligence."

In our opinion, the learned trial court did not err in refusing defendant's motion for a directed verdict.

■■ Defendant next contends that the main instruction given on behalf of plaintiff is incorrect. The instruction is patterned after the one suggested by our Supreme Court in the Harke case, supra. In the opening part it required a finding that plaintiff was a passenger in a motor vehicle "being driven by the defendant." Defendant contends that the instruction was erroneous because it failed to require a finding "that the instrumentality involved was under the management and control" of defendant; and that it failed to require the jury to find that defendant "possessed superior knowledge or means of information as to the cause of the occurrence.". These were not disputed matters. It is never reversible error to either assume or omit to require the jury to find admitted facts. Bowers v. Kansas City Public Service Co., 328 Mo. 770, 41 S.W.2d 810, 814. What was said by us in the Adams case, supra, [236 Mo.App. 899, 160 S.W.2d 829], applies with equal force to defendant in the instant case. "Le Bow [the driver] had the exclusive physical management and control of the car in so far as the plaintiff was concerned and possessed superior knowledge or means of ascertaining the cause of the door suddenly coming open." We rule the point against defendant.

The judgment is affirmed.

All concur.