## LIFE INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,

v.

**William McCUNE, Mary J. McCune, Carol Cole and David W. Suddarth, as personal Representative of the Estate of Linda Booth Appellants,**

v.

**Kathleen MYERS, as Guardian of Jacqueline M. Booth and Brandon S. Booth, and David W. Suddarth, as Personal Representative of the Estate of Gerard Booth, Respondents.**

Nos. 54939, 54944.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 14, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 15, 1989.

Case Transferred to Supreme Court
April 18, 1989.

Case Retransferred to Court of
Appeals Oct. 10, 1989.

Original Opinion Reinstated
Oct. 13, 1989.

---

Thomas F. Eagleton, Stuart Symington Jr., Mark Sableman, St. Louis, for appellant McCune.

Dennis J. Myers, Alan G. Kimbrell, St. Louis, for Kathleen Myers, as guardian-respondent.

Gerard T. Carmody, Deborah Bell Yates, St. Louis, for Life Ins. Co. of North America.

SMITH, Presiding Judge.

Appellants, hereinafter, for convenience, the McCunes, appeal from a judgment in an interpleader action awarding $300,000 of insurance proceeds to the respondents, hereinafter, for convenience, the Myers.

Linda Booth and Gerard Booth, a married couple, died on July 27, 1986, in a common disaster involving a collision with a train. Their deaths were simultaneous. No children were born of their marriage. Linda Booth's surviving heirs were William and Mary McCune, her parents, and Carol Cole, a sister. Gerard Booth's surviving heirs were Jacqueline Booth and Brandon Booth, minor children of his prior marriage to Kathleen Booth Myers. The children were in the custody of and resided with their mother and her present husband at the time of the Booths' death. Gerard Booth did provide child support and took the children as an exemption on his tax returns and had visitation privileges. David Suddarth is the administrator of the estates of both Linda Booth and Gerard Booth. In his capacity as administrator for Linda, he is aligned with the McCunes; as administrator for Gerard, he is aligned with the Myers. He is represented by different counsel in each capacity.

At the time of her death Linda was an employee of McDonnell–Douglas Corporation. She joined that company as an "hourly" employee in 1981 and was changed to a "salaried" employee on December 23, 1985. As part of a health care and disability employee benefits package, McDonnell of-

fered its salaried employees the option to purchase group accident insurance for themselves and their eligible dependents. Until May 31, 1986, the group accident insurance was underwritten by General American Life Insurance Company. There is no indication in the stipulation of facts, upon which the case was tried, that Linda had enrolled in the group accident coverage underwritten by General American.

On April 16, 1986, McDonnell distributed a "Summary of Material Modification" brochure (the Offering Brochure) to its employees including Linda. The new plan described therein was to be underwritten by Life Insurance Company of North America (LINA). The Offering Brochure stated that the new program was to replace the prior group accident insurance plan. The Offering Brochure contained an "Enrollment Change card" which the employee was to detach, complete and submit to the McDonnell payroll department in order to enroll in the accident insurance plan. On April 19, 1986, Linda completed and submitted the Enrollment/Change Card. As provided in the Offering Brochure, her coverage became effective June 1, 1986. Linda selected coverage of $500,000 in the event of her accidental death and the "family coverage" which provided $300,000 in the event of her husband's accidental death. She designated as her beneficiaries her husband and her father, each to receive 50% and her sister as contingent beneficiary to receive 100%.

The Enrollment/Change card provided no space for the employee to designate beneficiaries for the coverage on her husband. As respects the "family coverage" the Offering Brochure provided:

"You are automatically the beneficiary for your spouse and children unless you specifically designate someone other than yourself on a beneficiary designation for dependent Benefits Card."

Linda never executed and submitted such card. From June 1 until her death McDonnell deducted from Linda's paycheck the premiums for the accident insurance coverage.

At the time of Linda's death, McDonnell and LINA had not finalized the terms of their agreement to provide the group optional accident insurance and as a result there was no master policy or contract in effect until sometime after the death of the Booths. The policy as finally issued provided:

"If there is no beneficiary named under this policy, your loss of life benefits will be paid to the beneficiary designated under the Basic Group Life Plan provided by the Organization. You will be deemed to be the beneficiary of record for any insured dependent unless you have named another beneficiary in writing. If there is no surviving beneficiary, the Covered Person's loss of life benefits will be paid in one lump sum to the first surviving class of the following classes of the Covered Person's relatives: (a) wife or husband; (b) child or children; (c) mother or father. If there is no surviving member of any of the above classes, the benefits will be paid to the Covered Person's estate."

LINA filed its action in interpleader for a determination of who was entitled to the proceeds of the accident insurance. Specifically it admitted coverage and sought directions as to distribution of the $250,000 of coverage on Linda designated to go to her husband as beneficiary and the distribution of the $300,000 coverage on Linda's husband for which she had made no specific beneficiary designation. The trial court awarded the $250,000 to Linda's sister and the $300,000 equally to Gerard's children, Brandon and Jacqueline Booth. No appeal has been taken from the award to the sister. The McCunes appeal from the award of $300,000. We address only that issue.

The trial occurred on stipulated facts so there is no need for deference to the trial court on issues of credibility. The issue presented is one of law.

Three statutes are relevant here. Sec. 471.040 RSMo 1986, provides that where the insured and the beneficiary of a policy have died simultaneously, "the proceeds of the policy shall be distributed as if the

insured had survived the beneficiary." Under the facts here the distribution of the proceeds are to be made on the basis that Gerard survived Linda.

Sec. 376.530, RSMo 1986, makes it "lawful for any married woman, by herself and in her name, or in the name of any third person, with his assent or as her trustee, to cause to be insured for her benefit, the life of her husband." Upon the husband's death the money is payable to her for her benefit free from claims of the representatives or creditors of her husband, provided the wife paid for the insurance out of her own funds. There is no dispute that Linda paid for the accident insurance on Gerard from her funds.

Sec. 376.540, RSMo 1986, provides:

"In case of the death of the wife before the decease of the husband, the amount of the insurance shall be payable to her heirs, for their use, and to their conservator, if under age, *unless otherwise provided for and stipulated in the policy.*" (Emphasis supplied).

If these two last statutes are applicable here then Linda's heirs are entitled to the proceeds of the policy unless some other provision therefore was made in the policy. The respondents challenge the applicability of these statutes on two bases. Initially they contend that the record fails to establish the "assent" of Gerard to the policy and secondly, contend this is not a life insurance policy but rather an accident policy.

■ As to the first contention respondents misread the statute. Sec. 376.530 allows the wife to take out the policy in her name or in the name of a nominee. The "assent" requirement of the statute is that of the nominee not the husband.[1]

■ The second contention also misreads the statute. The statutory authorization is to insure the "life of her husband."

It is not limited to a "life insurance policy." If the policy provides insurance on the life of the husband it fits within the statutory authority regardless of what the policy may be delineated. The situation is analogous to those cases involving fire policies where the courts have held that the policy is judged by the risk or risks insured against and not by the label given. *Fireman's Fund Ins. Co. v. Vermes Credit Jewelry, Inc.,* 185 F.2d 142 (8th Cir.1950) [2, 3]; *Newcomer v. Standard Fire Ins. Co.* 165 F.Supp. 672 (E.D.Mo.1958)[2, 3]; *Huth v. Gen. Acc. & Life Assur. Corp., Ltd.,* 536 S.W.2d 177 (Mo.App.1976)[1]. A risk insured against here was husband's loss of life. We find the provisions of the statutes are applicable to this case.

■ There was no policy provision existent at the time Linda accepted the coverage or at the date of her death which would alter the distribution provided by Sec. 376.-540. The statutory provisions were incorporated as a matter of law into the policy and became a part of the insurance contract. *Bowers v. Kansas City Public Service Co.,* 328 Mo. 770, 41 S.W.2d 810 (1931)[4, 5]; *Newcomer v. Standard Fire Ins. Co., supra.*

■ As with any contract, however, the intent of the parties is the touchstone of contract interpretation. Linda's dealings concerning the policy were solely with her employer, McDonnell. LINA has admitted its liability for payment of the policy benefits. Whether it does so because of a contractual relationship with McDonnell or in recognition of McDonnell's status as its agent for purposes of contracting with Linda is of no concern to us. *See Burckhardt v. General American Life Ins. Co.,* 534 S.W.2d 57 (Mo.App.1975). It is therefore the contract agreement between Linda and McDonnell which we must examine. The documents supplied by McDonnell to Linda

---

1. In *Sells v. Fireside Life Ass'n.,* 66 S.W.2d 955 (Mo.App.1933)[1, 2] the court in dicta stated that if the evidence *conclusively established* that the policy was issued without the consent or knowledge of the insured the policy "would most surely have been void as a matter of law." We have some doubt about that dicta where Sec.

376.530 is involved. Here LINA has raised no question about the validity of the policy, the evidence does not conclusively establish absence of consent or knowledge, and in any event such a finding would preclude recovery by either set of claimants.

were silent on the ultimate beneficiary in the event Linda predeceased Gerard. The offering brochure did indicate she was automatically the beneficiary unless she otherwise designated. The form she executed did not provide for any contrary designation. Sec. 376.540 was in contemplation of law a part of her contract with McDonnell. In the absence of a contrary declaration that provision established Linda's heirs-at-law as the beneficiaries in the event she predeceased Gerard. There is no evidence in the record that Linda or McDonnell contemplated any other beneficiary distribution than that which the law would impose.[2]

The trial court based its decision upon the policy eventually issued by LINA. We can find no legal justification for such action. The offering brochure and signed enrollment card constituted the contract of insurance at the date of Linda's death. *Burckhardt v. General American Life Ins. Co., supra,* l.c. 65. Under those documents Linda's heirs-at-law were the beneficiaries of the coverage on Gerard in the event Linda predeceased him. Linda had the right to designate and thereafter change the beneficiary at any time she desired but that right obviously terminated upon her death. So did the right of McDonnell or LINA to change the terms and conditions of the policy. They could not after her death change the terms of her insurance contract by a provision imposing a new group of beneficiaries to whom Linda had not consented. The policy in effect on the date of Linda's and Gerard's death provided for payment of the proceeds to Linda's heirs-at-law.

That portion of the judgment appealed from is reversed and cause remanded with

directions to order distribution of the proceeds of the coverage on Gerald Booth's life to Linda Booth's heirs-at-law.

SATZ and CARL GAERTNER, JJ., concur.

2. Respondents point to the General American policy which would have provided distribution to Gerard's administrator. There is no evidence that Linda was aware of that policy or its provisions or that she or Gerard were insured thereunder. The Offering Brochure was expressly in replacement of a portion of the McDonnell Group Insurance Program Summary Plan which made no reference to the provision in the General American Policy itself concerning the beneficiary in the event the employee predeceased the spouse. The only statement in the Summary Plan was that the employee was automatically the beneficiary of the spouse's coverage. Nothing in the Summary Plan or the Offering Brochure replacing it advised Linda of the provisions of the General American policy in this regard. The provisions of General American's policy and LINA's policy, although similar, are not identical as to distribution where the spouse survives the employee. We find no relevance in the General American policy.