No. 28,900.

J. O. SMITH, *Appellee*, v. THE MEAD CONSTRUCTION COMPANY, a Copartnership, composed of F. D. MEAD and IVAN L. BOZELL, *Appellant*.

(282 Pac. 708.)

Opinion filed December 7, 1929.

C. L. Kagey and L. M. Kagey, both of Beloit, for the appellant.

A. W. Relihan and T. D. Relihan, both of Smith Center, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages to an automobile. The jury answered special questions and returned a general verdict for plaintiff. Defendants have appealed.

The Mead Construction Company, a partnership, had the contract for the grading and building of culverts on an improved highway project for three or four miles east from Smith Center. They began the work at the east end and worked toward the west. On October 13, 1924, they were working on the mile of road adjoining the town on the east, and at a place about three-quarters of a mile east of town an old culvert was taken out and the excavation made for putting in a new culvert. This excavation was three or four feet deep and sixteen feet wide, and was open when the workmen quit for the day. A plow used in the work was in the road a few feet west of this opening, and about fifty feet west of the opening a pile of sand, to be used in the cement work, had been placed near the south side of the road. Just north of the pile of sand and crossways of the road a cement mixer weighing nearly two tons had been placed. Further to the west and about seventy-five feet from the opening there was evidence that a barrier was across the road consisting of a 2 by 6 supported at the ends by pieces of 2 by 4 driven or set in the ground, but on this point the evidence was controverted. Further to the west, and perhaps 300 feet from the opening for the culvert, a steel pipe or rod had been driven into the ground, near the center of the road, on which a red sweater was hung. There is a controversy in the evidence as to whether this sweater was placed there on October 13 or the next day. There is also a controversy in the evidence as to whether there were red lanterns near the sand pile or elsewhere. At the west end of the road, where it connected with the pavement leading to town, there was an oil filling station, and at that point a barrier had been erected part way across the road. This consisted of a heavy bridge plank 12 or 14 inches wide

and 14 or 16 feet long set on stakes and extending out into the road from the north side perhaps half way across it, on which was written in large letters "Detour" with an arrow indicating the direction. There were also detour signs with arrows along the route of the detour. There was also a large detour sign at a conspicuous place near the business center of the city. Near where the culvert was to be constructed a temporary driveway was made on one side, designed primarily for the use of the workmen on the road. There was some travel on the road notwithstanding the fact that it was under construction and had the barricades and detour signs above mentioned.

The plaintiff, J. O. Smith, lived in Smith Center and operated a filling station. His son, Robert Smith, nineteen years of age, assisted in that business. Plaintiff owned a Stutz sport touring car which he permitted his son to drive when he was not using it. The son was a member of plaintiff's family and usually asked plaintiff for the use of the car. A few days before October 13 plaintiff and his wife had gone to Iowa on a visit and were away at the time of the casualty soon to be mentioned. While he was away a man was employed to assist plaintiff's son in operating the filling station. About 11:30 o'clock the evening of October 13 plaintiff's son, Robert, in company with Roy Rowding, a young man who lived at Smith Center, drove in this Stutz car east from Smith Center past the filling station and the detour sign and east on the road under construction. The road was practically level, slightly down grade to the east. The car struck the steel rod or pipe in the road and bent it and knocked the 2 by 6 barricade out of the road, if it was there. The right wheel of the car went over the sand pile, and about the same time the left wheel struck the cement mixer and knocked it more than thirty feet. The car perhaps went over the plow; at any rate it landed upside down in the excavation for the culvert. There were no marks of the car on the west edge of the opening for the culvert, indicating that the car had cleared the ground when it struck the sand pile and cement mixer. Robert Smith was killed, but this action does not involve the question of liability for his death. The car was practically demolished. The jury found it was worth $800 before the wreck and $100 afterwards, but returned a general verdict for plaintiff for $300. On motion of the plaintiff that was increased to $700 to correspond to the answers to special questions. The jury answered other special questions as follows:

"Q. 3: Do you find that the Mead Construction Company was negligent in not putting legal warning signs and barriers across the road at proper places west of the place where the culvert was taken out and the excavation was made? A. Yes.

"Q. 4: Do you find that the plaintiff, J. O. Smith, had any part in the operation of the car at the time and place of the accident and injury? A. No.

"Q. 6: Do you find that the deceased, Robert Smith, was engaged in any act or mission for his father, J. O. Smith, at the time of the injuries complained of? A. No.

"Q. 8: Was Robert Smith engaged in an act for his own pleasure at the time of the accident and injury? A. Yes.

"Q. 9: Did J. O. Smith, the plaintiff, know that Robert Smith had the car in use at the time of the injury complained of? A. No.

"Q. 13: Do you find that the damage to the car was caused by the combined acts of negligence of the defendant and Robert Smith? A. Yes.

"Q. 14: Were there any signs directing the traffic on the highway in question to detour one-half mile south which the deceased, Robert Smith, could have seen had he exercised ordinary care? A. Yes.

"Q. 15: If you answer the foregoing question 'yes,' where were such signs posted? A. At the Cole's garage.

"Q. 16: Was there bright moonlight at the time the accident occurred? A. Yes.

"Q. 17: Was the plaintiff's car in good condition at the time of the accident? A. Yes.

"Q. 18: Were the brakes of plaintiff's car in good condition at the time of the accident? A. Yes.

"Q. 19: Could deceased, Robert Smith, by the use of ordinary care have seen the obstructions in the highway in time to have avoided the accident? A. Yes.

"Q. 20: Was it a matter of common knowledge in the vicinity of Smith Center, Kansas, that the highway in question was under construction at the time of the injury to Robert Smith? A. Yes.

"Q. 21: Were there any obstructions in the highway west of the excavation where the injury occurred? A. Yes.

"Q. 22: If you answer the last question 'yes,' then state what they were. A. Cement mixer and sand pile and plow.

"Q. 23: If you answer question No. 21 'yes,' then state whether the driver of the car could by the use of ordinary care have seen such obstructions in time to have stopped his car and avoided the accident. A. Yes.

"Q. 24: If you find that the accident was caused by the negligence of defendants and also the negligence of the driver of the car, Robert Smith, then state whose negligence was the proximate cause of the injury to plaintiff's car. A. The Mead Construction Company."

While appellants present several legal questions, it will be necessary for us to consider but one of them. Defendants objected to the court submitting to the jury special question No. 24, and later moved that the answer to it be set aside. The objection and the motion

should have been sustained. While the question of what is the proximate cause of an injury is ordinarily a jury question, when the facts upon which the answer to the question depends are not controverted, or have been found, the question is one of law for the court. In *Railway Co. v. Columbia,* 65 Kan. 390, 69 Pac. 338, the principle of law applicable to this case is thus stated:

"In a case where it is either admitted, or from the facts as found established, that two distinct, successive causes, unrelated in their operation, conjoined to produce a given injury, the question of remote and proximate cause becomes one of law for the decision of the court, and not of fact for the determination of the jury, and the determination of this question of law by the jury is not binding or conclusive on the court." (Syl. ¶ 3.)

See, also, *Light Co. v. Koepp,* 64 Kan. 735, 68 Pac. 608; *Gas Co. v. Dabney,* 79 Kan. 820, 102 Pac. 488; *Norris v. Ross Township,* 98 Kan. 394, 397, 161 Pac. 582; *Lambel v. City of Florence,* 115 Kan. 111, 222 Pac. 64.

And in *Railroad Co. v. Justice,* 80 Kan. 10, 101 Pac. 469, the rule is thus stated:

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.

"If two distinct causes are successive and unrelated in their operation, one of them must be the proximate and the other the remote cause. In such case, the law regards the proximate as the efficient and responsible cause, and disregards the remote." (Syl. ¶¶ 2, 3.)

See, also, *Clark v. Powder Co.,* 94 Kan. 268, 272, 146 Pac. 320, and cases there cited; *Goodaile v. Cowley County,* 111 Kan. 542, 207 Pac. 785; *Beldon v. Hooper,* 115 Kan. 678, 224 Pac. 34.

Stated most favorably to plaintiff, the findings of the jury are that the defendants were negligent in not fully complying with the statute (R. S. 68-121) in the matter of maintaining red lights. (See *Galvin v. Stanton,* 120 Kan. 393, 243 Pac. 1049.) The jury also found the driver of the car to be negligent, and of necessity this negligence was successive to and unrelated to that of defendants, as is well illustrated by the cases above cited. Appellee relies upon the liability of joint tortfeasors as applied in *Wholesale Grocery Co. v. Kansas City et al.,* 115 Kan. 589, 224 Pac. 47, and allied cases. The rule there announced is not applicable. There was no concurrent wrongdoing in this case. If both parties were negligent, as the jury found, the negligence of the one was successive and unrelated to that of the other. It is clear, not only from the findings

234

of the jury but from the record of the case as a whole, that there would have been no injury to plaintiff's car had it not been for the negligence of its driver, and this must be held to be the active, proximate cause of the injury.

It necessarily follows that the judgment of the court below must be reversed with directions to enter judgment for defendants.

It is so ordered.