No. 37,258

ALBERT CRUZAN, *Appellee*, v. T. J. GRACE, SR., and T. J. GRACE, JR., doing business as THE KEYSTONE RANCH, *Appellants*.

(198 P. 2d 154)

Opinion filed October 9, 1948.

*Tom Harley, Jr.,* of Wichita, argued the cause, and *Tom Harley, Sr.,* of Wichita, was with him on the briefs for the appellants.

*Theodore R. Gardner* and *Benjamin H. Brown,* both of Wichita, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover damages for personal injuries. The defendants, T. J. Grace, Sr., and T. J. Grace, Jr., doing business as Keystone Ranch, appeal from the order overruling their demurrer to plaintiff's second amended petition. The pertinent part of the petition alleged:

"The plaintiff further states that the defendants own and operate and are doing business under the trade name of Keystone Ranch. That said Keystone Ranch consisting of some two thousand (2,000) acres of land, more or less, is located on Rural Route No. 2, Burns, Marion County, Kansas. That the business of said Keystone Ranch is that of farming, ranching and divers agriculture pursuits. That the plaintiff was employed to work on said ranch

by the defendant, T. J. Grace, Jr., and that he commenced so to do on April 3, 1947; and that he did so commence to work on the above said date. The plaintiff further states that on or about April 21, 1947, this plaintiff was an employee of the said Keystone Ranch, owned and operated by T. J. Grace, Sr., and T. J. Grace, Jr., and as a ranch hand, he was so employed, and among his numerous and divers duties, he was to harness up horses and team. That on or about 3:30 p. m., on April 21, 1947, this plaintiff was ordered by T. J. Grace, Jr., one of the defendants above-named, to harness up a certain team of horses, one of which, unknown to this plaintiff, was untamed and unbroken to work and of the age of three years. That this plaintiff did not know at the time that said horse was unbroken, untame and unsafe to work. That said horse was not a reasonable safe animal to work in this: that said horse was susceptible to running away at any time, all of which the defendants had knowledge of. That the purpose of plaintiff harnessing up this team of horses, was to plant Irish potatoes for the defendants and the work to be performed was to plow furrows for potatoes. While plaintiff was working on said ranch as a servant and employee of the defendants and in the regular course of his employment, he was ordered by T. J. Grace, Jr., to hitch up the team, one of which was the aforementioned unbroken, untamed horse. That unknown to this plaintiff, some employee had left a double-tree unfastened on the tongue of the wagon. That this double-tree fell off and hit the young unbroken horse on the heels, causing him to jump and then starting to run."

Appellants demurred to the petition on the grounds:

"FIRST: That said petition fails to state a cause of action against said defendants or either of them.

"SECOND: That said petition on its face shows that the alleged ordering by said co-defendant, T. J. Grace, Jr., to hitch up the team, one of which was said untamed horse, is not the proximate cause of the alleged injuries suffered by said plaintiff and that the proximate cause of said alleged injuries is the result of an intervening act of a third party entirely unrelated to any of the alleged acts of the defendants herein."

In support of the first ground of the demurrer appellants argue appellee assumed the risk of the injury sustained. They say the petition, in substance, disclosed:

Appellee contracted to work as a ranch hand on a 2,000-acre ranch; appellants' business consisted of "farming, ranching and divers agriculture pursuits"; such diversified work required the handling of horses; among appellee's duties as a ranch hand was that of harnessing horses; there is no allegation he was inexperienced in such work and it, therefore, must be assumed he was familiar with the general nature and character of the work he agreed to perform; on such a ranch it is common to find both young and old horses with varying dispositions; the ordinary ranch hand recognizes a three-year-old horse; he knows they are ordinarily touchy and inclined to run; it is not alleged this horse had a mean or vicious

disposition; it is alleged it was an unbrokan horse and susceptible to running away; although it is alleged appellee did not know the horse was unbroken and susceptible to running away there is no allegation he did not recognize its age; nor is it alleged he could not have discovered the alleged facts in the exercise of reasonable diligence; he had been on the ranch approximately three weeks; the facts stated describe a situation not at all uncommon to ranch life and one with which the ordinary ranch hand is quite familiar; the facts alleged inhere in the work appellee agreed to perform; they were within the range of his knowledge and were such as would naturally call for observation and inquiry by a prudent ranch hand.

It is true the general rule is that a servant assumes the work risks and dangers of his employment, including that of the negligence of a fellow servant. (*Barnaby v. Sears, Roebuck & Co.*, 132 Kan. 447, 295 Pac. 715.) See, also, *Parker v. City of Wichita*, 150 Kan. 249, 92 P. 2d 80.

Appellants lean heavily on the case of *Johnson v. Olson*, 145 Kan. 779, 67 P. 2d 422, which involved an action for damages resulting from death of a workman on a dairy farm who was attacked by a bull. Error was assigned on the trial court's instruction touching the assumption of risk. We said:

"In substance the trial court instructed the jury that in the course of his employment as a caretaker and feeder of defendant's dairy cattle, plaintiff's husband assumed the usual risks of his employment, including whatever was the common hazard of attack and injury from dairy animals, and likewise any such hazards as were as much within the range of his own knowledge as of that of his employer; and if his death occurred from his incurring such usual and known risks there could be no recovery. We think the instructions on this phase of the case were adequate and precise, in view of the evidence. Counsel for plaintiff bring into their argument that line of cases which hold it to be the employer's duty to furnish his employee with safe appliances, animate as well as inanimate, with which to work. We thing such cases so manifestly not in point that they need not be considered." (p. 783.)

In the instant case, we, however, have an additional fact. While it is not alleged as clearly as it might have been the petition is open to the construction the untamed horse was one of the horses appellee was ordered to use by one of his employers. If that be true, and on demurrer it is admitted, we would hesitate to say appellee did not have a right to assume the horse was broken and reasonably safe to be used.

It is not necessary to rest the instant decision on the question whether, under these circumstances, appellee assumed the risks in-

cident to handling horses. Under the allegations of the petition it does not appear the horse ran away because it was young and unbroken. The petition squarely alleges a subsequent, independent and intervening cause which caused the horse to run. The petition states:

"That unknown to this plaintiff, some employee had left a double-tree unfastened on the tongue of the wagon. That this double-tree fell off and hit the young unbroken horse on the heels, causing him to jump, and then starting to run."

We thus find a new and immediate cause stated, a cause which might well have prompted any older and trained horse to act in a similar manner. Any horse is likely to run when struck on its heels with a double-tree. Having definitely alleged the subsequent independent and unrelated fact which it is said caused the horse to run, the petition does not further assert such subsequent act would not have caused a young broken horse to run.

It is, of course, true that the question of what constitutes the proximate or efficient cause of an injury is ordinarily one for the jury. Where, however, it is either admitted, or from the facts as found established, that two distinct, successive causes, unrelated in their operation, conjoined to produce a given injury the question of remote and proximate cause becomes one of law for the decision of the court and not of fact for the determination of the jury. (*Railway Co. v. Columbia*, 65 Kan. 390, 69 Pac. 338; *Smith v. Mead Construction Co.*, 129 Kan. 229, 233, 282 Pac. 708; *DeBauge v. DeBauge*, 143 Kan. 880, 57 P. 2d 31, and cases therein cited.) Thus in *Railroad Co. v. Justice*, 80 Kan. 10, 101 Pac. 469, it was held:

" 'The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.'

" 'If two distinct causes are successive and unrelated in their operation, one of them must be the proximate and the other the remote cause. In such case, the law regards the proximate as the efficient and responsible cause, and disregards the remote.' " (Syl. ¶¶ 2, 3.)

To the same effect are *Smith v. Mead Construction Co.*, supra, and numerous other cases which might be cited.

The independent, intervening and efficient cause of the accident is alleged to have been the negligence of a fellow servant. The risk of that negligence, as previously shown, appellee assumed.

The order overruling the demurrer to the petition is reversed.