No. 39,574

BESSIE EMMERICH, *Appellee,* v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, CLARENCE E. FALCONER and ALLEEN I. FALCONER, Partners Doing Business as Falconer Furniture Company, *Appellants.*

(280 P. 2d 615)

Opinion filed March 5, 1955.

*E. M. Boddington, Jr.,* of Kansas City, argued the cause, and *Edw. M. Boddington,* and *J. O. Emerson,* of Kansas City, and *Charles L. Carr,* of Kansas City, Missouri, were with him on the briefs for appellant Kansas City Public Service Company.

*Leonard O. Thomas,* of Kansas City, argued the cause, and *Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder,* and *Lee E. Weeks,* all of Kansas City, were with him on the briefs for appellants Clarence E. Falconer and Alleen I. Falconer.

*John E. Shamberg,* of Kansas City, argued the cause, and *Joseph Cohen, Charles S. Schnider, Thomas E. Joyce, Joseph P. Jenkins,* and *Norma Braly,* all of Kansas City, and *Gordon K. Lowry,* of Valley Falls, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action wherein plaintiff sought to recover damages from two alleged joint tort-feasors for personal injuries sustained while riding as a passenger in a streetcar. She prevailed and defendants appeal.

Appellee Bessie Emmerich will be hereinafter referred to as plaintiff, appellant Kansas City Public Service Company as defendant transit company, and appellants Clarence E. Falconer and Alleen I. Falconer as defendants Falconer.

The pertinent facts are briefly summarized as follows: Defendants Falconer operated a furniture store on James Street in Kansas City and, as a result of the great flood in July, 1951, a deep layer of silt and mud had been deposited in their basement warehouse when the river returned to its channel. The first floor showroom fronting on James Street had caved in and, in order to get the mud and debris out of the basement, defendants Falconer built a ramp from the basement to the sidewalk for the purpose of supporting a box to be filled with river mud from the basement, drawn up the ramp across the sidewalk to the curb, emptied and returned to the base-

ment and refilled. The power to move the box was first supplied by a tractor pulling a chain attached to the box. The chain had links three inches long, one and one-eighth inches wide and approximately one-half inch thick. After the tractor backed eastward onto James Street, the box was pulled up the ramp to the curb. After the tractor returned to the curb, the box was allowed to slide back down the ramp into the basement. A few days before the accident, a truck was substituted for the tractor. The mud emptied into the street was hauled away. The procedure outlined had been under way for more than three weeks up to the time the plaintiff received her injuries. During these operations it was necessary for the truck to back across James Street, leaving the chain suspended across the car rails of the defendant transit company. In the forenoon of August 27, 1951, defendant transit company was operating a southbound streetcar on James Street. Plaintiff, a passenger in the streetcar, was seated on the east side of the car facing south, three or four seats behind the operator. The streetcar was being operated by one Behrens and, as he reached a point opposite defendants Falconer's store, the streetcar struck and severed the chain which was lying across the car tracks, causing the free end of the chain to fly into the air, striking and breaking the glass in the car window nearest where plaintiff was sitting. The evidence tended to prove the chain came through the window, hitting plaintiff on the head, knocking her to the floor of the streetcar, and she received cuts from the glass, bruises on the head and a back injury. The evidence disclosed that the streetcar operator on previous occasions had passed by the Falconer store and observed defendants Falconer cleaning the mud from the store basement. The evidence further disclosed on the day in question he passed the store three times before the accident, and was familiar with the clean-up operations in progress, generally, in the bottoms in Kansas City; that he was flagged down at the point in question on previous occasions; that sometimes Falconers had flagmen out, and other times they did not. Immediately prior to the streetcar striking the chain, a man ran out of defendants Falconer's store to wave or flag down the streetcar. There was evidence that no other warning was furnished by the Falconers. The operator stated the maximum safe speed for the operation of his streetcar at the place where the accident occurred was ten miles per hour. However, the evidence

disclosed he was operating the streetcar at the time and place at a speed of 25 to 35 miles per hour.

Plaintiff's petition alleged defendant transit company was guilty of negligence in operating its streetcar at a high, dangerous and excessive rate of speed under the circumstances then existing, in failing to have the streetcar under control, failing to keep a sharp lookout to see the chain across the tracks, and failing to stop the streetcar to avoid striking the chain. The alleged negligence of the defendants Falconer consisted in dragging the chain across James Street without first ascertaining the street was free of vehicular traffic, and in extending the chain across the heavily trafficked street on which streetcars pass, without providing watchmen, flagmen, signalmen, barricades or other warning to such vehicular traffic using James Street, of the existence and presence of said chain.

Defendant transit company by its answer admitted it was operating a streetcar along James Street at the time stated in the petition, but denied all other allegations excepting those pertaining to the negligence of defendants Falconer, who admitted in their answer they had suspended the chain across James Street; that the plaintiff was a passenger in the streetcar; that she may have sustained some injuries as a result of the incident which occurred at the time and place alleged, and denied they were guilty of any negligence which proximately contributed to her injuries.

On the issues thus joined, and the voluminous evidence submitted by the respective parties, the case was submitted to the jury which returned its general verdict in favor of the plaintiff and against both defendants in the sum of $9,000, and at the same time returned its answers to special interrogatories submitted by the court as follows:

"1. Do you find that the chain struck the plaintiff on the head as she was sitting in her seat in the streetcar?

"Answer: Yes.

"2. Do you find the defendants Falconer or any of their employees were guilty of any negligence?

"Answer: Yes.

"3. If you answer the foregoing question in the affirmative, state specifically what negligence you find.

"Answer: Insufficient signal man.

"4. Do you find the operator of the streetcar of Kansas City Public Service Company guilty of any negligence?

"Answer: Yes.

"5. If you answer the foregoing question in the affirmative, state specifically what negligence you find.

"Answer: Speeding.

"6. What injuries, if any, did the plaintiff receive when the window pane in the streetcar was broken?

"Answer: Back injured, cuts on head and face.

"7. What was the speed of the streetcar:

"A. When it struck the chain?

"Answer: 28 miles.

"B. When it was 50 feet north of the chain?

"Answer: 28 miles.

"C. When it was 150 feet north of the chain?

"Answer: 28 miles.

"8. Could the operator of the streetcar, in the exercise of the highest degree of care, as defined in the instructions, and with safety to his passengers, have seen the chain in time to have stopped his streetcar before striking the chain?

"Answer: Yes.

"9. At the time the streetcar struck the chain was the chain lying on the street or suspended in the air above the street?

"Answer: Lying on the street.

"10. If you find from the evidence that at the time in question Al Goodrich, or other employe of the defendants Falconer, attempted to signal the streetcar, then state whether or not in the exercise of the highest degree of care, caution and foresight, the operator of said streetcar could or should have seen such signal or attempted signal in time, and with safety to the passengers, to have brought the streetcar to a stop before striking the chain in question.

"Answer: Yes.

"11. Is the plaintiff now suffering from any disability which is not the result of progressive muscular dystrophy?

"Answer: Yes.

"12. If you answer Question 11 'Yes,' then state the nature of any disability from which she now suffers which is not due to progressive muscular dystrophy, and which was caused by injuries received on August 27, 1951.

"Answer: Headaches, dizziness, back pains."

Numerous post-trial motions were filed by the respective parties. Only those issues pertinent to the appeal will be considered here.

Defendants Falconer contend their demurrer to plaintiff's evidence should have been sustained, and assert their act of suspending or dragging the chain across the street and tracks did not, of itself, constitute negligence, inasmuch as the chain was visible at all times. It is to be noted defendants Falconer did not elect to stand on their demurrer, but proceeded to participate in the trial. The record discloses that although one of plaintiff's witnesses testified the chain was visible and suspended two feet in the air above the

car tracks at the time he observed it, other witnesses testified the street was muddy and the chain was covered with mud and lying across the tracks in the street, and they did not see the chain prior to the accident, and there were no barricades, warnings, watchmen or flagmen present to warn those using the street of the existing obstruction. This evidence presented a question for the jury as to whether the chain was, in fact, visible, and whether the operator of the streetcar should have seen it in time to have avoided it. If the chain was invisible due to the mud and existing conditions, a question was presented as to whether a watchman or flagman should have been furnished by defendants Falconer to warn the streetcar operator of the existing obstruction.

The rule is well settled in this state that when a defendant does not stand upon his demurrer to the plaintiff's evidence, and thereafter competent evidence in the case supplies the deficiency which may have theretofore existed in such evidence, any error in the overruling of his demurrer is cured and becomes immaterial. (*Henks v. Panning,* 175 Kan. 424, 264 P. 2d 483; *Tuggle v. Cathers,* 174 Kan. 122, 254 P. 2d 807; *Lechleitner v. Cummings,* 159 Kan. 171, 152 P. 2d 843, and numerous other decisions cited in West's Kansas Digest, Trial, § 418; 5 Hatcher's Kansas Digest [Rev. Ed.], Trial, § 167; 1 Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error, § 486.) Assuming without admitting that the sufficiency of plaintiff's evidence was questionable when defendants Falconer's demurrer was interposed, in view of subsequent evidence, we would be compelled to hold that any error committed by the trial court in overruling the demurrer was cured.

The transit company contends there was no evidence to sustain the answer to question No. 1. The record discloses the heavy chain struck the side of the streetcar with great force, breaking the glass in the window next to the plaintiff, resulting in the glass and a portion of the chain striking the plaintiff in the head, knocking her to the floor. The transit company also contends there was no evidence to support the answer to question No. 8. Again the record discloses the chain was visible to one witness when he was 75 feet from it, even though he was driving his automobile toward it from the opposite direction. The chain was suspended or lying across the street and car rails, and the operator had an unobstructed view of James Street ahead of him for several blocks. He testified he could see the tracks 100 feet ahead of him. Another witness

stated the chain was visible when he got onto the streetcar tracks. The transit company also contends the court erred in submitting question No. 10 to the jury. While the question appears to be somewhat involved, it cannot be held prejudicial to such an extent as to warrant a reversal, in view of the answers to questions 4, 5 and 8, finding the transit company negligent in that the operator was speeding and, in the exercise of the highest degree of care, should have seen the chain in time to have stopped the streetcar before striking it.

Defendants Falconer contend that the answer to question No. 3 found their negligence consisted of an "insufficient signalman" and that such ground of negligence was not alleged in plaintiff's petition. The petition alleged they were guilty of negligence in extending the chain across the heavily trafficked street on which streetcars pass, without providing watchmen, flagmen, signalmen, barricades *or other warning.* Certainly the charge of failing to warn is broad enough to include an insufficient signalman, whose only purpose would be to warn. The jury's answer to the question may not have been artfully phrased, and perhaps could have been described more accurately and completely. However, there was no motion made by defendants Falconer to have the answer made more specific or complete. Therefore, the answer will be considered in harmony with the general verdict, and the objection thereto comes too late to be considered. (*Baker v. Western Cas. & Surety Co.,* 164 Kan. 376, 383, 190 P. 2d 850.) The intended meaning of this finding is clear. There was ample evidence in the record to show that the operator of the streetcar knew the existing condition; that the chain process used in cleaning out the Falconers' basement had been going on for some three weeks, and that Falconers provided a watchman and flagman, who on previous occasions had flagged down the streetcar operator, but at the time and day in question, there was no watchman on the job. Just immediately prior to the streetcar striking the chain, a flagman ran out of Falconers' store in an attempt to flag down the car operator, but was too late to prevent the resulting accident. In other words, the jury found that Falconers had provided a watchman, but he failed in the performance of his duty on the particular occasion.

This court has repeatedly held the answers to special interrogatories are to be given the meaning intended by the jury, however unskilfully expressed, and that liberality of construction should

be indulged in order to avoid inconsistency between the findings and the verdict, and that this court will read into the special findings of the jury the meaning which the jury intended by them. (*Morrison v. Hawkeye Casualty Co.*, 168 Kan. 303, 311, 212 P. 2d 633; *Sheeley Baking Co. v. Suddarth*, 172 Kan. 533, 538, 241 P. 2d 496; *Taggart v. Yellow Cab Co. of Wichita*, 156 Kan. 88, 131 P. 2d 924; West's Kansas Digest, Trial, § 365(1); 5 Hatcher's Kansas Digest [Rev. Ed.], Trial, § 308.)

Defendants Falconer contend that the answers to the special interrogatories are inconsistent and not supported by the evidence. No useful purpose would be gained by setting forth the testimony in the voluminous record supporting the answers to each separate interrogatory. It may be stated that each of them is sustained by competent evidence and they are not inconsistent with each other, nor with the general verdict.

Both defendants contend that the court erred in certain specified instructions to the jury. Able counsel for the respective parties requested certain instructions and they were discussed in detail with the trial court, at the conclusion of which the court gave to the jury some 39 instructions covering all the issues and questions of law involved therein. Defendants' contentions have been examined and it may be stated that one or two instructions, if isolated from the context of all, might be subject to criticism. However, taken as a whole, the instructions ably apprised the jury of the issues and the questions of law involved, and we find no error justifying a reversal.

Defendants Falconer further contend that the trial court should have sustained their motion for judgment, notwithstanding the verdict, for the reason that the jury did not find them guilty of negligence. The gist of their argument is that the jury found they had an "insufficient signalman"; that this could not have been the proximate cause of the injury and that, at most, they created the condition and their negligence, if any, was remote. In answering this contention, we need only point out that in an action for damages grounded on negligence, the questions of negligence and of proximate cause are for the jury to determine. (*Trapp v. Standard Oil Co.*, 176 Kan. 39, 269 P. 2d 469.) The jury was instructed on concurrent negligence, remote and proximate cause, and there was substantial evidence to support the jury finding defendants Falconer were guilty of negligence.

It has been stated that where injury to an innocent person would not have occurred, except for the concurrent negligence of others, the subject of proximate cause need not be considered, and those whose acts united in producing the injury will be held jointly and severally liable to the injured party. (*Taggart v. Yellow Cab Co. of Wichita*, supra.) While it has been held that if two distinct causes are successive and unrelated in operation, they cannot be concurrent, the rule that the causal connection between the actor's negligence and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause. It has also been held that one who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof, although the innocent act of a third person may have contributed to the final result. (*Rowell v. City of Wichita*, 162 Kan. 294, 303, 176 P. 2d 590.) A cause is considered to be concurrent if it was a cause which was operative at the moment of injury and acted contemporaneously with another cause to produce an injury and was an efficient cause in the sense that without it the injury would not have occurred. (*Polzin v. National Cooperative Refinery Ass'n*, 175 Kan. 531, 266 P. 2d 293; *Noel v. Menninger Foundation*, 175 Kan. 751, 267 P. 2d 934.) So, where a defendant knows or has reasonable means of knowing that consequences not usually resulting from the act are likely to intervene so as to occasion damage, he is liable although it be not an ordinary and natural consequence of the negligence. (*Noel v. Menninger Foundation*, supra.)

The jury found the condition created by defendants Falconer in leaving the chain extended across the streetcar tracks without a proper warning device constituted negligence. It also found the streetcar operator was negligent in operating his car at an excessive speed at the time and place, and in failure to see the chain across the tracks and stop the car to avoid the ensuing accident. The jury by its general verdict further found the combined negligence of both defendants was the proximate cause of plaintiff's injury.

It is next contended by both defendants that the verdict of the jury was excessive. The record discloses that plaintiff was 41 years of age with a life expectancy of approximately 25 years. There

was evidence that plaintiff was disabled from doing any work in the future, and medical testimony showed that her condition was permanent; that she had suffered extreme pain and would continue to so suffer in the future. The record discloses that although the plaintiff, prior to the accident, was suffering from the disability of muscular dystrophy, the injuries received by her in the accident were separate and distinct from that existing condition. No useful purpose could be gained by relating, in detail, the specific injuries and suffering sustained by plaintiff. Suffice it to say that we have carefully reviewed the record and failed to find anything warranting a reversal of the judgment on the ground of excessive verdict.

Other contentions asserted by the respective parties have not been overlooked, but after a careful examination are found to be without sufficient importance to warrant a reversal of the judgment. The record taken as a whole discloses substantial justice has been done, and the judgment is, therefore, affirmed.