Orville M. GASTON, Appellant,

v.

WABASH RAILROAD COMPANY, a corpo-
ration, and F. Burkart Manufacturing
Company, a corporation, Respondents.

No. 46473.

Supreme Court of Missouri,
En Banc.

March 9, 1959.

Rehearing Denied April 13, 1959.

**866**

Grover Childers, Fred Bellemere, Jr., Kansas City, for appellant.

James H. Ottman, William W. Shinn, Kansas City, Sebree, Shook, Hardy & Ottman, Kansas City, of counsel, for respondent Wabash R. Co.

Otto R. Erker, Pendleton Goodall, Jr., St. Louis, Lyman Field, Clay C. Rogers, Kansas City, Rogers, Field, Gentry & Jackson, Kansas City, of counsel, for respondent, F. Burkart Mfg. Co.

HYDE, Presiding Judge.

Action for damages for personal injuries. Plaintiff had verdict and judgment for $22,500 against both defendants; but the court sustained defendants' motions for judgment, entered judgment for each defendant; and also granted a new trial to each defendant, on the ground of error in instructions, in the event judgment for defendants was reversed. Plaintiff has appealed.

At the hearing on appeal in this court, plaintiff conceded that the judgment for the Wabash was correct and that under the law of Kansas, which is applicable to this case, as declared in Ruiz v. Midland Valley Railroad Co., 158 Kan. 524, 148 P.2d 734, 152 A.L.R. 1307, plaintiff has no case against the Wabash. Therefore, the judgment in favor of the Wabash will be affirmed.

Plaintiff, a resident of Kansas and an employee of General Motors Corporation there, was injured in Wyandotte County, Kansas, while unloading boxes and bundles of cotton bats from a Wabash box car. These were marked "F. Burkart Manufacturing Company, St. Louis, Missouri"; and the car was loaded as cars were usually loaded by defendant, F. Burkart Manufacturing Company, hereinafter called Burkart. Plaintiff, while carrying some of this material, stepped into a hole in the floor of the car (seven feet from the south end) and fell. It was described by an employee who saw him fall as a rather large hole, "around two planks wide * * about a foot and a half long." The steel framework of the car could be seen under the hole. No noise, indicating a board breaking, was heard when plaintiff fell. The floor of the car was completely covered with fresh paper extending from one side of the car "clear across to the other", so that plaintiff could not see the floor of the car. He could not notice anything that was different about the paper where he stepped through the hole from the paper on the rest of the floor of the car. Plaintiff said the hole "was about five to seven inches wide and about thirty inches long, and it was weather beaten, weather marked." He further stated he did not observe any fresh looking wood there that indicated a recent break, "it was weathered and there was no sign of any—of ever being repaired, anything put on top of it, only the paper, and no nail marks on the side or edge." It was shown by deposition of Burkart's General Superintendent that, before loading a car with such cotton, in 95 per cent of the cases the floor would be covered, and it was a mistake if this was not done. "If there is an oil on the bottom of the car, such does prevail sometimes, the car is covered with cardboard. * * * If it is just splintery or something like that, it is covered with paper." Burkart's loading foreman said it was the ordinary practice to cover car floors with paper or cardboard; "the floor has to be mighty good" if it is not covered. The purpose of the paper was to keep the cotton clean.

■ We think it is clear that the law of Kansas controls in this case, as Burkart contends. "The law of the place of wrong

determines whether a person has sustained a legal injury." A.L.I. Restatement of Conflict of Laws, Sec. 378. "The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place." Restatement of Conflict of Laws, Sec. 377. "Where the alleged negligence which causes the accident resulting in the death or injury occurs in one state or country, and the accident itself in another, it is the law of the latter place, and not of the former, that governs." 11 Am.Jur. 493, Sec. 182; see also 15 C.J.S. Conflict of Laws § 12, p. 899; Hughes Provision Co. v. La Mear Poultry & Egg Co., Mo.App., 242 S.W.2d 285, and authorities cited.

■ Burkart contends it is not liable under the Kansas rule stated in the Ruiz case (148 P.2d loc. cit. 737), that negligence of a delivering carrier in delivering a defective car (in violation of its duty to inspect) constitutes the sole proximate cause of the injury, being held an independent agency severing the negligence of the originating carrier and making it only a remote cause. It is conceded that Kansas has applied this rule only between carriers. However, it is pointed out that the Ruiz case (and other Kansas cases) cited as authority, for its rule as to liability of carriers, two Michigan cases in one of which shippers were involved, namely Fowles v. Briggs, 116 Mich. 425, 74 N.W. 1046, 40 L.R.A. 528, and Lellis v. Michigan Central R. Co., 124 Mich. 37, 82 N.W. 828, 70 L.R. A. 598. In the Lellis case, the decision against liability of the originating carrier was based on Fowles v. Briggs, supra. In the Fowles case, it was claimed that defendants, the shippers, negligently loaded a car of lumber which shifted when a coupling was being made and crushed the brakeman of the railroad transporting it. The Court held defendants owed no duty to the deceased, there being no contract relations between them, after the defendants had parted with the control of the car, because then "the railroad company owed the duty to decedent of causing an inspection or of providing a rule for inspection." [116 Mich. 425, 74 N.W. 1047.] (However, it does not appear whether or not the improper loading was obvious so as to be easily discoverable by inspection.) The Court said: "In the present case the defendants owed the railroad company the duty of using ordinary care in loading the car in question; but, before the car came to decedent, it was the duty of the railroad company to provide for the inspection. Here was the intervention of an independent human agency. A leading case is Winterbottom v. Wright, 10 Mees. & W. 109, in which case it was held that the defendant, who had contracted with the postmaster general to provide a mail coach, and keep it in repair, was not liable to an employee of one Atkinson, who had contracted with the postmaster general to provide horses and coachmen for the purpose of carrying the mail."

Winterbottom v. Wright, cited and followed by the Michigan Court, actually held no action could be maintained on the contract itself by the injured party but was interpreted more broadly to include tort liability because of dicta in opinions therein. See Prosser on Torts, 2d Ed., 497, Sec. 84. This view has been repudiated in England (Donoghue v. Stevenson, 1932 A.C. 562; Grant v. Australian Knitting Mills, 1936 A.C. 85); and the cases following it in this country were shown to be incorrect in Justice Cardozo's landmark decision of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696. The rule established by the MacPherson case has been generally accepted throughout the United States and is the rule stated by the American Law Institute's Restatement of Torts, Sec. 395; see Sec. 396 as to inspection. (See also Secs. 388, 393, applying similar rules to all suppliers of chattels.) It has been said: "This rule obtains in Kansas, provided of course that the injured party does not know or have reason to appreciate the danger. See Stevens v. Allis-Chalmers Mfg. Co., 151 Kan. 638, 100 P.2d 723; Spencer v.

Madsen, 10 Cir., 142 F.2d 820." Vrooman v. Beech Aircraft Corp., 10 Cir., 183 F.2d 479, 481. The principle established by the MacPherson case is certainly applicable here, if Burkart in loading the car, as alleged, by its affirmative action changed its condition so as to conceal such a large hole in the floor of the car, located in a place where employees of the consignee would necessarily go to unload the boxes and bundles in it (weighing 30 to 60 pounds), by covering it with wrapping paper. This created a dangerous hidden condition which was in effect a concealed trap that could not be discovered by inspection inside the car and made discovery by any inspection more difficult. (The paper would prevent light from showing through the hole, when the car door was opened, making discovery from inspection under the car more difficult.) Whatever may be the rule in Kansas between carriers as to failure to discover defects by inspection, which each had the duty to make, we think a state which recognizes the rule of the MacPherson case would apply its principle to impose liability upon a party, who by its affirmative action changes such a defective condition to hide it and make it more dangerous and more difficult to discover. We will therefore consider that Burkart would be liable to plaintiff under the law of Kansas for the negligence alleged; and hold that the trial court improperly entered judgment in favor of Burkart on the theory that it was not liable to plaintiff for such negligence.

■ Burkart also contends plaintiff did not make a jury case because of failure to prove the existence of a hole in the car at the time. it loaded it, citing Markley v. Kansas City Southern R. Co., 338 Mo. 436, 90 S.W.2d 409, 412. However, in that case we pointed out: "There was no evidence to show whether the car in which plaintiff was injured was an old car or a new car, to show when it was brought to the switch of the crusher company, or to show how long it had been there. * * * Nor was there any evidence as to what the

hole in the bottom of this car looked like or whether it appeared old or weathered or new." We did say in the Markley case that whether or not there was a hole in the car floor when it was received (in this case by Burkart) was a fact that could be established by circumstantial evidence; and the very facts which we noted were absent in the evidence in the Markley case were shown herein. As stated supra, plaintiff testified this break was weathered, weather beaten, weather marked and he saw no fresh looking wood indicating a recent break. Interrogatories, answered by the Wabash, showed that it delivered its Car No. 48720 to Burkart's St. Louis plant on August 6, 1947; that the Wabash thereafter delivered the car to the Union Pacific; and that plaintiff was injured in unloading a Wabash car on August 13, 1947. Burkart further contends there is no evidence that Car No. 48720 was the car in which plaintiff fell. However, plaintiff testified that the Wabash car, in which he fell, was loaded with cotton bats in boxes and bundles marked "F. Burkart Manufacturing Company, St. Louis, Missouri". Thus the inference that this car was loaded by Burkart is warranted, but there was nothing in the evidence to show whether or not Burkart loaded any other Wabash cars. However, it appears from the deposition of Burkart's General Superintendent that there was a Burkart record of loading Wabash Car No. 48720; so that at least proof is available to definitely identify the car plaintiff was unloading from Burkart and Union Pacific records. Therefore, we should not affirm the judgment entered in favor of Burkart for failure of proof on this issue. See Markley v. Kansas City Southern R. Co., supra, 90 S.W.2d loc. cit. 414, and cases cited.

■ Burkart further contends plaintiff's claim is barred by the five year statute of limitations (citing Sections 516.100, 516.120, 516.180, RSMo 1949, V.A.M.S.) claiming that plaintiff's third amended petition, filed more than five years after its first petition, introduced a cause of action

entirely new and distinct from that pleaded in the original petition. Plaintiff did make some different allegations concerning the Wabash in its last petition, but the negligence alleged against Burkart is exactly the same in both petitions. Therefore this contention is without merit and is overruled; and the judgment entered in favor of Burkart will be reversed.

However, we must affirm the action of the trial court in granting Burkart a new trial on the ground of error in Instruction No. 2. This instruction was as follows: "The Court instructs the jury that if you find and believe from the evidence that on or about August 6, 1947, the defendant, F. Burkart Manufacturing Co., received Wabash Railroad Co. car No. 48720 for loading, if so, and if you further find that on August 8, 1947, defendant, F. Burkart Manufacturing Co., commenced loading said car with cotton batting and other materials, if so, and if you further find that before loading said car the defendant, F. Burkart Manufacturing Co., through its agents and employees within the regular scope of their employment spread wrapping paper over the floor of said car, if so, and if you further find that by spreading said paper, if you so find, the defendant covered and concealed a hole in the floor of said car, if so and if you further find that said hole was a dangerous and defective condition in said car, and if you further find that defendant knew, or in the exercise of ordinary care should have known, that the covering of said hole was likely to cause injury to anyone working in or about said car, if so, and if you further find that defendant was negligent in covering said hole, if so, and if you further find that plaintiff's fall on or about August 13, 1947, if so, and injury, if any, was directly caused by said negligence, if any, of the defendant, F. Burkart Manufacturing Co., then your verdict should be in favor of the plaintiff and against the defendant, F. Burkart Manufacturing Co."

Burkart says this instruction failed to require a finding that Car No. 48720 was the car in which plaintiff was injured or that a hole existed in the floor of this car at the time Burkart loaded it; and we find the instruction to be defective in these respects. It is obvious that this instruction fails to require a finding that plaintiff fell in Car No. 48720 or that he worked in unloading Car No. 48720 or even that plaintiff worked in or fell in any car. Instead it assumes that plaintiff had a fall but requires no finding by the jury as to when or where or under what circumstances. It also assumes there was a hole in the floor of the car at the time Burkart covered it without requiring the jury to make any such finding. (The instruction authorizing a verdict against Wabash clearly did require a finding that there was a hole in the floor of the car when it was delivered to Burkart, but Wabash will not be in the case on retrial.) Under the authorities hereinabove cited, Burkart would only owe a duty to persons unloading the car for or in it with the consent of the consignee (Restatement of Torts, Sec. 388, comment "a"); but this instruction required no finding that plaintiff had anything to do with unloading this or any car or fell in any car. These were all contested issues upon which plaintiff had the burden of proof, plaintiff's allegations concerning them being denied by Burkart and there being no evidence except plaintiff's evidence. (The only instructions requested by Burkart were on burden of proof and credibility of witnesses.) It must be remembered that the trial court granted a new trial in this case on the ground that it erred in giving this instruction, and that fact distinguishes this case from those cited by plaintiff. (The only cases cited by plaintiff in which a new trial was granted were Bowers v. Kansas City Public Service Co., 328 Mo. 770, 41 S.W.2d 810, in which the order was affirmed; and Banks v. Koogler, Mo.Sup., 291 S.W.2d 883, in which the new trial was not granted on the ground of error in the instruction but instead that it authorized a finding not supported by the evidence.) As we said in Jones v. Kansas City, Mo.Sup., 243 S.W.2d 318, 321: "It is unnecessary to determine whether the

giving of the instruction would have been reversible error had the motion for a new trial been overruled. The trial court apparently believed that under the facts and circumstances of this case the giving of the instruction was prejudicially erroneous. He sustained the motion for a new trial on the ground that he had erred in giving this and other instructions. We think the defects apparent in the instruction are sufficient to sustain the trial court's action." See also Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W.2d 599, 604, and cases cited; Teague v. Plaza Express Co., 356 Mo. 1186, 205 S.W.2d 563, 566, and cases cited; Hensley v. Dorr, Mo.Sup. 191 S.W.2d 663, 665. We think the defects in this instruction hereinabove pointed out are sufficient to sustain the trial court's action. Burkart claims there was no evidence to support these essential omitted findings, but we have hereinabove discussed and ruled on these contentions.

The judgment in favor of Wabash is affirmed, and the judgment in favor of Burkart is reversed and remanded.

All concur except WESTHUES, J., who dissents in part believing that instruction in question is not prejudicially erroneous.

On Hearing En Banc

PER CURIAM.

Burkart now contends that our Divisional opinion overlooked the Kansas law on the effect of intervening cause of failure to inspect which it claims makes its alleged negligence a remote and not a proximate cause. However, in none of the carrier cases cited did it appear that the original carrier, by its affirmative acts, had altered an existing condition to make it more dangerous by creating a concealed dangerous condition, as it is claimed Burkart did in this case; and apparently the negligence charged against both carriers in the cited cases was failure to discover a defect by inspection. Ruiz v. Midland Valley R. Co., 158 Kan. 524, 148 P.2d 734, 152 A.L.R. 1307; Rodgers v. Missouri Pacific R. Co., 75 Kan. 222, 88 P. 885, 10 L.R.A.,N.S., 658; Missouri, K. & T. Ry. Co. v. Merrill, 65 Kan. 436, 70 P. 358, 59 L.R.A. 711; see also Illustration 1 under Sec. 393, Restatement of Torts. Burkart cites other Kansas cases, not involving carriers, which it says are controlling here, namely: McCallion v. Missouri Pacific R. Co., 74 Kan. 785, 88 P. 50, 9 L.R.A.,N.S., 866; Smith v. Mead Construction Co., 129 Kan. 229, 282 P. 708; Cruzan v. Grace, 165 Kan. 638, 198 P.2d 154; Wright v. Kansas City Structural Steel Co., 236 Mo.App. 872, 157 S.W.2d 582, applying Kansas law and approved in Folsom v. Lowden, 157 Kan. 328, 139 P.2d 822, 825. All of these cases (except the Smith case) involved negligence in furnishing unsafe things, which negligence was held to be a remote cause and not a proximate cause because of an efficient intervening cause. In the McCallion case, furnishing a car with a broken chain (which both the carrier and plaintiff's employer failed to discover or repair) was held to be a remote cause and the negligence of the plaintiff's employer (who required him to work in the defective car), in failing to furnish him a safe place to work, was held the proximate cause. In the Cruzan case, furnishing an unbroken horse to hitch to a plow was held to be a remote cause and negligence of a fellow servant, in leaving a double-tree unfastened to the tongue, so that it fell and struck the horse, was held the proximate cause. However, the court pointed out it was no allegation that a broken horse would not run away under the same circumstances. In the Wright case, furnishing a defective scaffold board, in an old scaffold not built for the use of plaintiff's employer, was held to be the remote cause, and negligence of the plaintiff's employer in ordering him to use the old scaffold was held to be the proximate cause. In the Smith case, the failure of a contractor on road construction work to maintain lights and barricades was held to be a remote cause of damage to the plaintiff's automobile but the jury found the driver was negligent and his negligence was held the proximate cause.

However, there is another line of cases in Kansas which we think are more in point in this case and authorize holding that the negligence of Burkart in creating the concealed dangerous condition herein involved was a concurring proximate cause and not a remote cause. In Crow v. Colson, 123 Kan. 702, 256 P. 971, 973, 53 A.L.R. 457, the negligence of a hotel owner in improperly attaching a window screen, which fell and struck plaintiff's husband (causing his death) when the screen was struck by a guest, was held a concurring proximate cause; and reversed the action of the trial court in sustaining the defendant's demurrer "upon the ground that the injury was brought about by an intervening cause." In Clark v. E. I. Du Pont de Nemours Powder Co., 94 Kan. 268, 146 P. 320, 322, L.R.A. 1915E, 479, defendant after shooting a well with solidified glycerine left some of it near the well. A workman, unskilled in its use, took it home and placed it in a crevice in a stone fence of an abandoned cemetery on his father's farm. Two years later, three boys found it and hit it on a rock to break off a piece to take home, causing it to explode and injure them. The court affirmed a judgment against defendant saying the crux of the matter was that "no new power of doing mischief was communicated to the solidified glycerine by the acts of" the workman; and his action in placing it where he did "does not amount to an unrelated and efficient agency to shift the proximate cause from the delict of the powder company to a new proximate cause of his own making;" but that the issue of defendant's negligence as proximate cause was for the jury. We may say here that "no new power of doing mischief" was communicated to the concealed dangerous condition of the car herein (created by the affirmative negligent acts of Burkart) by the failure of later handlers of the car to discover by inspection the dangerous condition created by Burkart. The Crow case and the Clark case were cited with approval in Noel v. Menninger Foundation, 175 Kan. 751, 267 P.2d 934, 937, where it is said: "The rule that the causal connection between an actor's negligence

and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause." In the Noel case, the negligence of the hospital in permitting a mental patient to cross a road, where he was struck by a truck, was held a concurring proximate cause of the plaintiff's injury. This principle was thereafter applied in Emmerich v. Kansas City Public Service Co., 177 Kan. 443, 280 P.2d 615, 622, in which store owners left a chain (being used to haul mud out of their basement) across streetcar tracks. A streetcar negligently operated at excessive speed struck and broke the chain, a loose end striking and breaking the window where plaintiff was sitting, injuring her. Judgment against both defendants was affirmed, the court holding the questions of negligence and proximate cause were for the jury, saying as to the store owners' liability: "Where a defendant knows or has reasonable means of knowing that consequences not usually resulting from the act are likely to intervene so as to occasion damage, he is liable although it be not an ordinary and natural consequence of the negligence." See also Rowell v. City of Wichita, 162 Kan. 294, 176 P.2d 590.

The above-cited cases and other similar Kansas cases were reviewed in the recent case of Steele v. Rapp, 183 Kan. 371, 327 P.2d 1053, 1065. There the defendant sold to a beauty shop inflammable fingernail polish remover, negligently failing to put it in a safe container or give warning by label or otherwise of its dangerous quality. An operator in the shop of the buyer dropped the jug causing an explosion that injured plaintiff. The court held that the negligent dropping of the jug was not as a matter of law an intervening cause which prevented the negligence of the defendant from being a proximate cause of the plaintiff's injuries, saying: "Upon the admitted facts alleged the

·negligence of the defendant was operative at the moment of plaintiff's injury and acted contemporaneously with the negligent act of Loretta Jamison, an employee of the beauty shop, and was an efficient cause in the sense that had the plaintiff and Loretta Jamison been advised of the highly inflammable and explosive character of the fingernail polish remover, proper precautionary measures could have been taken to safely handle the product; or had the defendant delivered the fingernail polish remover in a safe container the explosion would never have occurred. Under these circumstances the consequence of the negligent acts of the defendant in creating the dangerous condition was natural and probable, or likely to occur, according to reasonable experience of mankind. The intervening cause might reasonably have been anticipated by a prudent person in defendant's position." Likewise we hold here that the claimed intervening cause, failure to discover by inspection, might reasonably have been anticipated by Burkart because it had so effectively concealed the hole as to make its discovery by ordinary inspection most difficult and unlikely; or at least the jury reasonably could so find. Furthermore, we think it reasonably might be found that injury to anyone unloading the car would be a natural and probable consequence of covering the hole with paper (so as to create "a dangerous hidden condition which was in effect a concealed trap") and that such a result of its acts might reasonably have been foreseen. Therefore, our conclusion is that, under the law of Kansas, the jury reasonably could find the claimed negligent acts of Burkart constituted a concurring proximate cause of plaintiff's injuries.

Burkart reargues failure of proof as to identity of the car involved, and objects to our following our ruling in Markley v. Kansas City Southern R. Co., 338 Mo. 436, 90 S.W.2d 409, to remand the case. We reaffirm the rulings made in our opinion on this and other matters raised and the result therein reached.