RICHARD P. TANGUAY *vs.* WOOD CONVERSION COMPANY
& another.

Plymouth. March 2, 1964. — June 1, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Negligence,* Defective freight car, Assumption of risk, Contributory. *Evidence,* Interrogatories.

At the trial of an action against a shipper, which had loaded a freight car in another State, by one injured when his foot went through a defective plank in the floor of the car while he was working in the car at its third and last stop, the answer of the defendant to an interrogatory propounded by the plaintiff that "the floor of the freight car appeared to be in proper condition" at the time of the loading was binding on the plaintiff where he had introduced the interrogatory and answer in evidence and no testimony or permissible inference contradicted the answer; and a verdict for the defendant was rightly directed. [532–533]

Evidence in an action against a consignee of goods in a freight car, that when the car was loaded the floor was entirely covered with wallboard, a brittle material too soft for flooring but used to protect the goods, that when the defendant's goods were being unloaded at the next to the last stop of the car the defendant's foreman discovered a defective plank in the floor of the car under one of the pieces of wallboard, that, upon completion of the unloading, he replaced the piece of wallboard over the defective plank, leaving the entire floor again covered, although he knew that the goods remaining in the car would be unloaded at the last stop of the car, and that the plaintiff, an employee of another consignee, while working in the car at its last stop, was injured when his foot went through the piece of wallboard and the defective plank, warranted a finding of negligence on the part of the defendant toward the plaintiff and did not require as matter of law a finding that the plaintiff assumed the risk of injury or was contributorily negligent. [533–534]

TORT. Writ in the Superior Court dated February 10, 1959.

The action was tried before *Vallely, J.*

*Joseph J. Walsh* for the plaintiff.

*Frederick H. Balboni* for Robert J. Stalker, Inc. .

*William J. Fenton* for Wood Conversion Company.

KIRK, J. The plaintiff, an employee of George A. Shurtleff & Son (Shurtleff), one of three consignees of a shipment of wood products, was injured when his foot went through a defective plank in the floor of the freight car which he had helped to unload at Middleborough on May 12, 1958. He brought this action of tort for negligence against Wood Conversion Company (Conversion), the shipper, which had loaded the car at Cloquet, Minnesota, and against Robert J. Stalker, Inc. (Stalker) of South Braintree, which had ordered the entire shipment and had designated the quantities to be shipped and the sequence of delivery to itself and the other two consignees of the load. The third consignee was Blacker & Holland Lumber Company (Blacker) of Norfolk Downs. At the close of the evidence, the judge directed verdicts for the defendants Conversion and Stalker. The case comes to us on the plaintiff's exceptions to these orders.

We test the correctness of the judge's action by summarizing the evidence in the light most favorable to the plaintiff and by applying the familiar rule stated in *Kelly* v. *Railway Exp. Agency, Inc.* 315 Mass. 301, 302. *Mazzaferro* v. *Dupuis,* 321 Mass. 718, 719. The interior of the freight car was forty feet long and nine feet high. To protect the material shipped, Conversion covered the entire floor of the car with dunnage consisting of a single layer of abutting pieces of wallboard (a brittle wood product, too soft for flooring) which were one-half inch thick and four feet by eight feet in size. Pieces of the same material in various sizes were placed between cartons to brace the load and separate the shipments. The Stalker shipment (39,200 feet of material) took up the entire width and thirty of the forty feet of the length of the car and was four feet high. Blacker's shipment (7,500 feet of material) was placed on top of Stalker's near the door. Shurtleff's shipment (7,500 feet

of material) occupied the remainder of the floor space at one end of the car. On April 16, 1958, Conversion sealed the car and it was hauled to Massachusetts. The first stop was at Norfolk Downs where the Blacker shipment was removed. When the car arrived at Stalker's premises in South Braintree on April 30, 1958, the doors were not sealed. Stalker had them sealed and they were kept sealed whenever the car was unattended on Stalker's premises. Stalker's shipment was unloaded in six hours on May 5, 1958. In the course of the unloading, Stalker's foreman, while walking over the layer of dunnage, felt the floor "give" under his foot. He lifted the piece of dunnage which covered the area and observed a defective plank in the floor of the car. The plank was six inches wide and had an "indentation" or "depression" of about one inch which ran for a length of one and one-half feet from the edge of the door opening. The foreman thought the plank was unsound. He removed the piece of dunnage which covered the defective plank and substituted a steel plate. Upon completion of the unloading, the foreman removed the steel plate and sealed the doors of the car. He knew that the material remaining in the car was consigned to Shurtleff and would be unloaded by Shurtleff's employees in Middleborough. The car arrived there, with seals unbroken, on May 5, 1958. On May 12, 1958, Shurtleff's shipment was unloaded. When the seals were broken, the entire floor of the car was evenly covered with dunnage. The plaintiff assisted in the unloading. While the plaintiff was carrying an armful of dunnage to throw from the car, in accordance with a custom whereby the last consignee cleans out the car, he was injured. His foot went through the piece of dunnage on the floor and through the defective plank which it covered.

We think that on this evidence the judge was right in directing a verdict for the defendant Conversion. The only evidence as to the condition of the floor of the freight car prior to the commencement of the loading in Minnesota was an answer by Conversion to an interrogatory propounded

by the plaintiff which was introduced in evidence by the plaintiff. The answer was that "the floor of the freight car appeared to be in proper condition." If the plaintiff introduced no evidence to contradict this answer, he is bound by it. *Luoma* v. *Socony-Vacuum Oil Co. Inc.* 332 Mass. 101, 104, and cases cited. We think that there was no contradiction here. There was no testimonial contradiction. The circumstances of the case do not permit a contradiction by inference. The lapse of time, the distance traveled, the accessibility by others to the car, and the activities of loading and unloading since the laying out of the dunnage by Conversion preclude an inference that the plank which was found to be defective on May 5, 1958, was in fact defective prior to April 16, 1958, when the dunnage was placed in position, and the further inference that if the plank was weak, Conversion in the exercise of reasonable care should have known of it. Also, there was no showing here, as there was in *Gaston* v. *Wabash R.R.* 322 S. W. 2d 865, 868 (Missouri), cited by the plaintiff, that the appearance of the depressed plank warranted a finding that it had been in a defective condition for an extended period of time rather than having been recently caused.

On the other hand, we think that the case against Stalker should have been submitted to the jury. The jury were not required to believe the testimony of Stalker's foreman that before he sealed the car he did not replace the steel plate with a piece of wallboard which had covered the defective plank. Disbelieving this, the jury could find as a fact, as the plaintiff testified, that when the seals were broken upon the arrival of the car at Shurtleff's, the entire floor of the car was covered evenly with dunnage. From this fact the jury could draw the inference that Stalker's employee had covered the defect with wallboard. The covering or concealment of the defect, which Stalker's foreman knew would constitute, unless discovered, a source of danger to one who would unload the material which remained in the car at Shurtleff's, could be found an act of negligence as to the plaintiff who was unaware of the defect and was in fact in-

jured by it. *Riley* v. *Lissner,* 160 Mass. 330. *Galli* v. *Drapeau,* 216 Mass. 144. The jury could find that Stalker's foreman owed to one in the plaintiff's situation the duty at least to leave exposed to observation the dangerous condition which he had discovered.

It cannot be said that the plaintiff as matter of law had assumed the risk of injury (*Goldberg* v. *Norton Co.* 335 Mass. 605, 609) or was contributorily negligent (*Duff* v. *Webster,* 315 Mass. 102, 103).

As to Conversion, the plaintiff's exceptions are overruled. As to Stalker, the plaintiff's exceptions are sustained.

*So ordered.*